# Taylor *et al. v.* The State.

*Indictment for Aiding Felon to Escape.*

1. *Witness; competency of.*—Section 2302 of the Code of 1852, which changed the common law disqualification of witnesses, except in cases of perjury, &c. leaving the conviction as a matter directed to the credit of the witness, was omitted from subsequent revisions of the statutes ; and being a law of a permanent and general nature, its omission under the provisions of the subsequent Codes, worked its repeal, leaving the common law rule as to the competency of witnesses in full force, except as altered by legislation.

2. *Same.*—At the common law, a person duly convicted of burglary, or grand larceny, was rendered infamous, and our statutes not having changed the common law rule, such person is not a competent witness.

3. *Board of Revenue of Montgomery ; what best evidence of proceedings of.*— The "Board of Revenue of Montgomery," is an inferior jurisdiction, required by statute to keep a record of its proceedings, and to appoint a clerk, who is keeper of its records. It has authority to hire out convicts sentenced t o hard labor ; and where a person deduces his authority to the custody of a convict from a contract with the Board, a transcript from its records, duly certified by the clerk, is the best mode of proving the exercise of its power.

APPEAL from Elmore Circuit Court.
Tried before Hon. JAMES Q. SMITH.
The opinion states the facts.

———— ————, for appellants.

HENRY C. TOMPKINS, Attorney-General, *contra.*

BRICKELL, C. J.—Two witnesses, one of whom had been convicted of burglary, in the City Court of Montgomery, a court of competent jurisdiction, and the other of grand larceny, in the same court, were received as witnesses on behalf of the State, against the objection of the appellants. The judgments of conviction were in full force, and the witnesses were undergoing the punishment to which they had been respectively sentenced.

The rule of the common law is, that persons convicted of treason, felony, and the *crimen falsi,* were rendered infamous, and were disqualified as witnesses in cases civil or criminal. 1 Phill. Ev. 17; 1 Green. Ev. § 372; 1 Whart. Ev. § 397. The meaning of the term *crimen falsi,* which was borrowed from the Roman law, has not been defined with precision. It is generally accepted as embracing all offenses tending to pervert the administration of justice by falsehood or fraud.

1 Phill. Ev. 17; *Cheatham v. State*, in MSS. The basis of the rule seems to be, that such a person is morally too corrupt to be trusted to testify—so reckless of the distinction between truth and falsehood, and insensible to the restraining force of an oath, as to render it extremely improbable that he will speak the truth at all. Of such a person, Chief Baron GILBERT remarks, that "the credit of his oath is overbalanced by the stain of his iniquity."—1 Green. Ev. § 372. The disability could be removed, but in the present case there is no averment that it had been, and it is not necessary to inquire when it was regarded as removed.

Grand larceny was at common law (and is under our statutes) a felony, and a conviction for it was a disqualification as a witness.—1 Whart. Cr. Law, § 760; 1 Whart. Ev. § 397, note 1. Burglary was at common law a felony, but within the benefit of clergy.—4 Black. 228. The definition of a burglar, as given by Sir Edward Coke, and quoted by Blackstone, is, "he that by night breaketh and entereth into a mansion house, with intent to commit a felony." The offense at common law must have been directed against the habitation, and the constituents of it were, *time, place, manner,* and *intent,* all of which must have coexisted. The offense could be committed only by *night,* in no other *place* than the mansion or dwelling house, and only by a *breaking and entry,* and with a *felonious intent;* otherwise it was a mere trespass. Under our statute, the *time* of committing the offense is not material, it may be either in the *night* or *day time; a felonious* intent, or *an intent to steal,* is a necessary ingredient of the offense—and it is not complete, unless there is a *breaking and entry.* It is not only the *dwelling house,* but "any building, structure, or inclosure within the curtilage of the dwelling house, though not forming a part thereof; or any shop, store, warehouse, or other building, structure, or inclosure, in which any goods, merchandize or other valuable thing is kept for use, sale or deposit," &c.—Code of 1876, § 4343. It is not the severity of punishment, but the nature of the offense, which creates legal infamy, and disqualification as a witness. The bill of exceptions does not disclose the particular species of burglary of which the witness was convicted—whether it was the offense as defined at common law, or the statutory offense. But it is not important whether it was the one or the other; it was a felony; and an intent to steal, or to commit a felony, must have attended the guilty act. It involves equal moral and legal turpitude with other felonies which disqualify, and is as inconsistent with the common principles of honesty, or humanity. The witnesses were, therefore, incompetent at common law, and that law,

so far as it relates to the competency of witnesses, is the rule of decision, unless it has been changed by statute.

The Code of 1852 changed the rule of the common law, except as to persons convicted of perjury, or subornation of perjury, leaving the conviction as matter directed only to the credit of the witness.—Code of 1852, § 2302. This statute was not, however, carried into the Revised Code of 1867, and has not been since re-enacted. The 10th section of the Revised Code (as does the same section of the present Code) repealed all statutes of a *public, general, and permanent nature*, not included in the Code. The result is, the omission of the section of the Code of 1852, to which we have referred, from the subsequent revision of the statutes, operated its repeal, and the restoration of the common law.

"The Board of Revenue of Montgomery County" is an inferior jurisdiction, required by statute to keep a record of its proceedings. It is clothed with a very large part of the power, and jurisdiction, which was by the general statutes vested in the Court of County Commissioners, which is expressly declared a court of record. The declaration of the statute, is perhaps merely of the necessary legal result from the nature of the jurisdiction and power of the court, and the mode in which it is exercised. Of the officers of the "Board of Revenue," the statute requires there shall be a clerk, who is made the keeper of its records. The hiring of convicts sentenced to hard labor for the county, is one of the powers of the Board, and its exercise is matter which should properly appear on its records. The better mode of proving the exercise of the power, when the person hiring deduces his authority to the custody of the convict from it, is a transcript of the record, duly certified by the clerk of the Board. Such a certified transcript, it is the exclusive duty of the clerk to make.

The improper admission of the witnesses, is an error for which the judgment must be reversed, and the cause will be remanded. The appellants must remain in custody until discharged by due course of law.