[Sylvester v. The State.]

# Sylvester *v.* The State.

## *Indictment for Murder.*

1. *When record must show presence of defendant in capital case.*—On appeal in a capital case, the failure of the record to show affirmatively, that the defendant was personally present in court when the day for his trial was fixed, and the order made for summoning a special *venire*, is a reversible error.

2. *When defendant's presence will not be presumed, or error waived.* In such case this court will not presume from the mere silence of the record, that the defendant was present when the day for his trial was fixed, and the order made for summoning a special *venire;* nor will it be held that the error was waived by his proceeding to trial without objection.

3. *Practice in excusing jurors summoned to try a capital case.*—"Without deciding it to be error to excuse a juror from service before a capital felony is regularly called for trial, when he is shown to be exempt by statute," the court expresses the opinion, "that the safer practice is not to excuse any juror in advance of the trial, until he claims the privilege of such exemption on his name being regularly drawn."

4. *When evidence irrelevant and inadmissible.*—The guilt or innocence of a defendant in a criminal case can not be, in any manner, affected by *ex parte* statements made in his absence, whether they be inculpatory or exculpatory; and hence, on the trial of a defendant charged with murder, the fact, that, on an inquest held over the body of the deceased, no charge was made against the defendant, and no evidence was introduced, implicating or tending to implicate him in the killing, is irrelevant and should be excluded from the jury, when it is not shown that any of the witnesses for the State were examined before the coroner, and their testimony could not thereby be impeached.

5. *Testimony taken before coroner; when inadmissible on trial for murder.* The written statement of the testimony of a witness examined before a coroner, and by him reduced to writing, on an inquest held by him over the body of the deceased, is not competent evidence for a defendant on trial for murder, on proof that the witness had removed from the State.

6. *Person convicted of infamous crime incompetent as a witness.*—At common law persons convicted of crime which rendered them infamous, such as treason, felony and *crimen falsi,* were incompetent to testify as witnesses; and, in the absence of statutory provisions changing the common law, that rule prevails in this State.

7. *Same; conviction of petit larceny renders witness incompetent.*—A conviction of petit larceny renders a witness infamous, and, therefore, incompetent to testify.

8. *When declarations made in presence of deceased incompetent.*—Where, on the trial of a defendant indicted for murder, it was shown that the deceased came to his death from a cut or stab made at night with a knife or some other sharp instrument, the fact that one who was present at the scene of the crime, but who was not examined, told a witness, a short time after the wound was inflicted, in the presence of the deceased, that he did not know who struck the deceased, that it was too dark to recognize any one, and that the deceased heard the statement and made no reply, is not competent evidence for the defendant, although no eye-witness to the transaction was examined, and the State relied in

2

[Sylvester v. The State.]

part on dying declarations of the deceased, subsequently made, to show that the defendant dealt the fatal blow.

9. *Cross-examination of witness; what competent to show on.*—It is competent for the State, on the cross-examination of a witness examined on behalf of a defendant on trial for murder, and who had testified to material facts relating to the commission of the offense, for the purpose of testing his bias or prejudice, to show that the witness had been summoned as a juror on a former trial of the cause, and that he had then stated on his *voir dire*, that he had no fixed opinion as to the defendant's guilt or innocence that would bias his verdict.

10. *Malice implied from use of deadly weapon; character of weapon a question for the jury.*—Malice may be implied from the use of a deadly weapon; and the character of the weapon used, whether deadly or otherwise, is, in most cases, a question for the jury, to be determined from its description by witnesses, the nature of the wound inflicted, the opinion of experts, and other circumstances in evidence.

11. *Charge assuming pocket-knife not a deadly weapon erroneous.*—The refusal of a charge requested by a defendant on trial for murder, which assumes, as matter of law, that a pocket-knife is not a deadly weapon, is free from error.

12. *Dying declarations; theory on which they are admissible in evidence.* Dying declarations are not admissible in evidence merely on the ground, that they are not wilfully or intentionally false; but from the necessity of the case, in order to bring man-slayers to justice, and because, being uttered under a sense of impending death, the solemnity of the occasion is tantamount to the safeguard of an oath.

13. *Same; weight of.*—If such declarations point to the identity of the defendant, as the guilty agent, with the same clearness and certainty as if the deceased had designated him by name, they are entitled to as much weight as if the defendant's name had been expressly mentioned.

14. *Flight of defendant as evidence of guilt.*—The flight of a defendant in a criminal case may or may not be considered as a circumstance tending to prove guilt, depending on the motive which prompted it,—whether a consciousness of guilt and a pending apprehension of being brought to justice caused the flight, or whether it was caused from some other and more innocent motive.

APPEAL from City Court of Mobile.

Tried before Hon. O. J. SEMMES.

At the November term, 1880, of said court, Nat Sylvester, *alias* Nathaniel Sylvester, the defendant, was indicted for the murder of Jeremiah Lynch; and at a subsequent term he was tried and convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for ten years. It does not appear from the record that the prisoner was present in court, either in person or by attorney, when a day was appointed for his trial, and the order made for summoning the special *venire ;* nor does it appear that the defendant made this the ground of objection in the court below. On the day preceding the day set for the trial, on empaneling the regular jurors for the week, one of the jurors, whose name was on the regular panel, and also on the special *venire* summoned to try the defendant, a copy of which had been served on him, claimed and showed to the court, that he was exempt under the statute from jury duty ; and he was thereupon excused from service

[Sylvester v. The State.]

on the regular panel, but was told by the sheriff, that he was also on the special *venire*, and that he must return on the day set for the trial. The defendant was not present, either in person or by attorney, when the juror was excused. The juror having failed to attend on the day fixed for the trial, he was fined; but on a subsequent day, on a showing made by him, that he had misunderstood the order of the court and the direction of the sheriff, the fine was remitted.

On the trial it was shown that the deceased, about seven or eight o'clock one night in May, 1872, was wounded on the streets, in the city of Mobile, the wound consisting of a smooth cut or stab in the left breast, about half an inch in length, the depth of which was not known, made by some sharp instrument, it being such a wound as could have been made by an ordinary pocket-knife; that from the effects of the wound he died a few days after it was inflicted, and that he was at the time a policeman of said city. None of the witnesses examined on the trial saw the fatal blow, or the person by whom it was given. The evidence for the State, however, tended to show that the deceased was wounded while he was on duty as a policeman, and while he, with another policeman by the name of Finnegan, was in the act of arresting one of four or five negroes, who were committing a breach of the peace, and among whom was the defendant, a "very black negro;" and that the defendant inflicted the wound. The evidence tending to show that the defendant was the guilty agent, consisted of a confession made by him, of dying declarations made by the deceased, and other evidence circumstantial in its nature. It was also shown that the defendant left the city of Mobile on the day following the night when the deceased was wounded, under circumstances tending to show that he had received information that officers of the law were after him, and that his purpose in leaving was to evade arrest; and that in July, 1879, he was arrested in Pensacola, Florida, where he was known by a different name, and was thence brought to Mobile and there lodged in jail. Several witnesses were examined by the State's solicitor as to declaration made by the deceased after he was wounded. These declarations were made at different times, and "under such circumstances as to fall under the class of dying declarations." They related principally to the person by whom the wound was inflicted. According to the testimony of the several witnesses on this point, to one of them he stated the name of the party who struck him to be Nat Sylvier; to another, that the name was Nat Sylveste; to another, that the name was Nat Sylvester; and to another, that the name was Nat Sylveste or Nat Sylvester. The only declaration made by him touching the circumstances under which he was wounded,

was, "that some negroes were in a row, and while in the act of arresting one of them, he was stabbed." It was also shown that the defendant, prior to the killing, was known by the name of Nat Sylveste and also by the name of Nat Sylvester. There was also evidence tending to show that at the time the deceased was wounded it was very dark.

That the wound was inflicted, and that Lynch died from its effect, does not seem to have been controverted in the court below.   It appears that the line of defense was, (1) that the defendant was not the guilty agent, and that the deceased erred in stating in his dying declarations that he inflicted the fatal wound; and (2) that the blow was stricken in a mutual rencounter.   The defendant introduced evidence tending to discredit the witness for the State who testified to a confession by the defendant that he inflicted the blow; also tending to show that at the time the deceased was stabbed pistol-shots at or near the place were heard, and also evidence tending to establish an *alibi*. He examined as a witness one Cain who was the coroner of Mobile county in 1872, and who had, on an inquest held by him over the body of the deceased, examined witnesses and caused their testimony to be reduced to writing.   This witness was asked by the defendant, whether any charge was then made against the defendant, but, on objection made by the State to the question, the court refused to allow the witness to answer it, "unless the defendant expected to show that some of the witnesses on this trial testified before the coroner, which had not been done up to this time;" and to this ruling the defendant excepted.   The defendant then asked the witness this question: "Was there or not at that time before you any evidence implicating, or tending to implicate Nat Sylvester in the killing of Jerry Lynch."   To this question the State objected, the objection was sustained, and the defendant excepted.   The witness was then handed a paper, a copy of which is made an exhibit to the bill of exceptions, "which he identified as the testimony of James Finnegan before the coroner's jury at the inquest held over the body of the deceased.   The witness then testified that James Finnegan had left Mobile, and witness had not seen or heard of him since the inquest.   The State's solicitor here admitted, that a sealed envelop, addressed 'James Finnegan, McGregory's Landing, Iowa,' postmarked as mailed in Mobile, Ala., Aug. 19th, and returned to the writer, Sept. 24th, 1881, contained a letter which was addressed and mailed (as shown by the envelop) by the attorney of the defendant to said Finnegan, according to information given such attorney as to the last residence of said Finnegan by the clerk of the court and the witness Bressingham; and that such letter was forwarded to its destination and returned, because the said

[Sylvester v. The State.]

Finnegan could not be there found." It was also shown that Finnegan left this State a short time after Lynch's death, and had never since been heard of. The defendant then offered to read the testimony of said Finnegan to the jury; but the State objected, the objection was sustained, and the defendant excepted. The defendant "then introduced as a witness one Scott Smith, but the State objected to said Smith being allowed to testify, on the ground that he had been convicted of petit larceny." The defendant admitted that said Smith had been convicted of and sentenced for petit larceny in the City Court of Mobile, but insisted on his competency. The court sustained the objection made by the State, and refused to allow the witness to testify, and the defendant excepted. The defendant also examined as a witness one Sawyer, who testified, in substance, that on the night the deceased was stabbed, he was walking along Royal street, in the city of Mobile, and when he had reached a stated point he heard two pistol-shots fired and stopped, and in a few minutes Jerry Lynch and a man named James Finnegan came up, when Lynch said that he had been stabbed, and asked witness to help him; and that witness then asked Lynch whether he knew the name of the man that stabbed him, and Lynch replied that he did not; that witness then asked Lynch whether he could describe the man, and Lynch said he could, stating that he was a yellow negro; and that witness and Finnegan then accompanied Lynch to the guard-house. The defendant then offered to prove by this witness that he asked Finnegan that night, in the presence of the deceased, whether he knew who stabbed the deceased, and that Finnegan replied that he did not know who stabbed him, that it was too dark for them to recognize any one; and that the deceased heard this statement and did not reply or say any thing. On the objection of the solicitor the court would not allow the defendant to make the offered proof, and he excepted. On cross-examination, the solicitor asked this witness, whether he was not summoned as a juror on a former trial of this case, stating to the court that he expected to show that the witness was summoned as such juror, and that he then swore that he had no fixed opinion that would bias his verdict. To this question the defendant objected, but his objection was overruled, and he excepted. The witness having answered in the affirmative, the solicitor then asked him, what answer he made when the clerk asked him, on the *voir dire*, whether he had a fixed opinion as to the defendant's guilt or innocence that would bias his verdict. To this question the defendant objected, and the court overruled his objection, and he excepted. The witness answered that his reply to the question was, that he did not have "such fixed opinion." Other exceptions were

[Sylvester v. The State.]

reserved by the defendant to the rulings of the lower court on the admissibility of evidence; but, as they are passed on together by this court, without discussion, it is not deemed important to state the facts upon which they are based. . The bill of exceptions purports to set out all the evidence

The court, in its general charge, instructed the jury, *inter alia*, that if they "found from the evidence that the wound was made with a deadly weapon, a presumption of malice would arise, unless the evidence in the case negatived the idea of malice." To this portion of the general charge the defendant excepted. The defendant then asked the court in writing to give to the jury the following charges, among others: 20. "If you believe from the evidence that Jeremiah Lynch and another officer went towards a crowd of negroes, and a mutual encounter then ensued, in which one or more shots were fired, and in which the deceased received the fatal blow from the prisoner, and that the wound received by the deceased was a straight smooth cut or stab, not more than a half inch long, and such as a pocket-knife of ordinary size could have made, and of unknown depth; and if the evidence wholly fails to prove to you any other description of the instrument with which the wound was made, or any other details of the stabbing, you can not find the defendant guilty of murder in any degree." 21. "If you believe from the evidence that Jeremiah Lynch and another officer went to arrest a crowd of negroes, and a mutual encounter ensued, in which one or more shots were fired, and in which the deceased received the fatal blow from the prisoner, and that the wound received by the deceased was a straight cut or stab, not more than a half inch long, and such as a pocket-knife of ordinary size could have made, and of unknown depth; and if the evidence wholly fails to prove to you any other description of the instrument with which the wound was made, or any other details of the stabbing, you can not find the prisoner guilty of murder in any degree." 22. "If you believe from the evidence that there was a mutual encounter between some negroes, of whom the defendant was one, on the one side, and the deceased and another officer, on the other side, and that in such encounter the officers, or one of them, shot one or more times at the negroes, and the prisoner stabbed the deceased; and if the evidence wholly fails to prove to you who began such encounter, or who was at fault in it, and also fails to show, whether the shooting was done before the stabbing, or the stabbing was done before the shooting; and fails to show, whether the prisoner could or could not have escaped great and imminent danger to his life, without stabbing the deceased; then you must find the defendant not guilty." 5. "A man's dying declarations are never equivalent to more than the testimony

of one witness, and there is no rule of law. requiring the jury to even give them equal consideration with the testimony of one witness who is upon the stand, and subjected to a cross-examination. They are simply allowed to go to the jury, because of the presumption, that such declarations are not wilfully or intentionally false." These charges the court refused to give, and the defendant separately excepted.

The court, at the request of the solicitor for the State, gave to the jury the following, among other charges, to which the defendant duly excepted, to-wit: 2. "If the jury believe that Jeremiah Lynch, in each of his dying declarations, referred only to the prisoner at the bar, and to no one else, as the man who stabbed him, then they should attach the same weight to those declarations as if the dying man had made mention of the prisoner's entire name at each time that he stated who stabbed him." 3. "That flight may be considered by them, in connection with the other evidence, as a circumstance of guilt; and the jury may also look to the changing of name, and to every other circumstance, as well as to whatever positive evidence that has been presented in the case, to arrive at a conclusion of the defendant's guilt." The solicitor also requested another charge, numbered 1, which need not be set out.

GREGORY L. SMITH, for appellant.

H. C. TOMPKINS, Attorney-General, and FRANCIS B. CLARK, Jr., for the State.

SOMERVILLE, J.—The record in this case fails to show that the defendant was personally present in court when a day was fixed for his trial, and the order was made for summoning the special *venire*. It is insisted by appellant's counsel that this defect is a reversible error. The same point was raised in *Hall v. The State*, 40 Ala. 698, and was there left undecided, the court, however, expressing the opinion with emphasis, "that it is the safer and better course to have the prisoner in court when such orders are made, and that the record should so affirm." In the case of *Spicer v. The State*, 69 Ala. 159, we held, that, in every capital felony, the record must affirmatively show that the court *appointed a day for the trial of the prisoner*, and that the making of such order can not be presumed from the mere silence of the record; nor would the necessity for it be waived by the fact that the prisoner proceeded to trial without objection. It is certainly the undoubted right of every defendant to be present at each stage of a criminal procedure by which his liberty may be affected, or his life be put in jeopardy. And the settled rule seems to be, especially in capital

[Sylvester v. The State.]

cases, that the record must affirmatively show such presence, in the absence of which it would be unsafe for the appellate court to presume it.—1 Bish. Cr. Procedure, § 1180. There are few, if any preliminary proceedings, prior to the verdict, of more importance in criminal trials than legislative details securing the right to have a fair and impartial jury. Of these the most vital, in many cases, often is the order appointing a day for trial and fixing the number of jurors to be summoned. Such an order should never be made in the absence of a defendant, and we must not presume he was present when the record omits to show the fact by positive affirmation. We believe it to be the sounder rule, and the one more in harmony with the past decisions of this court on similar questions, that the defect presented for our consideration is a reversible error, and that the failure of the prisoner to object was no waiver.—*Spicer v. The State, supra;* 1 Bish. Cr. Proc. § 271. The distinction between the principle settled here and that in *Paris'* case (36 Ala. 232) is fully pointed out in *Spicer v. The State, supra,* and nothing need be added on that point. The two decisions are in perfect harmony.

Without deciding it to be error to excuse a juror from service before a capital felony is regularly called for trial, when he is shown to be exempt by statute, we are of opinion that the safer practice is not to excuse any juror in advance of the trial until he claims the privilege of such exemption on his name being regularly drawn.—*Parsons v. The State,* 22 Ala. 50.

There was no error in sustaining the objection of the solicitor to the questions propounded to the witness Cain. It was totally immaterial as to whether or not any charge had been made against the defendant upon the occasion of the coroner's inquest touching the present homicide. It does not appear that any of the State witnesses had testified before the coroner, and the questions propounded could have no pertinency except for the purpose of impeachment in such event. The guilt or innocence of the prisoner can in no manner be affected by *ex parte* statements made in his absence, whether they be inculpatory or exculpatory.

For like reason the written statement of the witness Finnegan, taken at the coroner's inquest, was properly excluded, especially in view of the fact that the witness was not shown to be deceased.—*Dupree v. Ths State,* 33 Ala. 380.

The court properly excluded the testimony of the witness Scott Smith, which was offered by the defendant. He was shown to have been duly convicted of the offense of petit larceny, and this fact operated to entirely disqualify him from testifying in a court of justice. At common law, persons convicted of crimes which rendered them *infamous* were excluded

from being witnesses. An infamous crime was regarded as comprehending treason, felony, and *crimen falsi*, and, in the absence of existing statutory provisions, the common law rule is now the law of this State.—*Taylor v. The State*, 62 Ala. 164. We are of opinion that a conviction of petit larceny at common law rendered a witness infamous. Grand and *petit larceny*, according to the better opinion, were both felonies at common law.—Bish. Cr. L. § 974; 1 Hale, P. C. c. 43, p. 503. Lord COKE says that one convicted of petit larceny might be placed in the public pillory within the discretion of the judges, and this was a punishment attached to infamous crimes.—3 Just. 218. It is the actual conviction and not the mere fact of guilt which disqualifies. So it is the nature of the crime, and not the magnitude of the punishment, which constitutes a blemish on the moral character, and thereby incapacitates to testify by rendering infamous. The test seems to be, "whether the crime shows such depravity in the perpetrator, or such a disposition to pervert public justice in the courts, as creates a violent presumption against his truthfulness under oath." 1 Bish. Cr. L. § 974 Upon reason and authority alike, we think the witness was incompetent, and such seems to be the uniform holding of the courts both in England and America.—1 Whart. Ev. § 397, *note: Pendock v. Mackinder*, Willes (Com. Pleas), Rep. 665; *Lyford v. Farrar*, 31 N. H. (11 Fost.), 314; *State v. Gardner*, 1 Root, 485. It was incompetent to prove what was said by the witness Sawyer to Finnegan in the presence of Lynch, the deceased. No admission of the deceased would be admissible in evidence against the State, except as part of the *res gestæ*. It would be mere hearsay.

The questions put to Sawyer, touching his previous expressions of opinion when summoned as a juror in the case, were manifestly proper on cross-examination, as they served to test his bias or prejudices which had a tendency to color his testimony.

The charge given by the court, of its own motion, was correct. If the fatal wound was inflicted with a deadly weapon, this would be a fact from which the existence of malice could be inferred on the part of the perpetrator, and the character of the weapon used, whether deadly or otherwise, is in most cases a question for the jury, to be determined from its description by witnesses, the nature of the wound inflicted with it, the opinion of experts, and other circumstances in evidence.

The written charges numbered 20, 21 and 22, which were requested by the defendant, were properly refused. They entirely exclude from the jury the important consideration that the deceased was an officer of the law, and was killed while in the act of making a lawful arrest, and erroneously assume that

[Harris v. Miller.]

the killing was perpetrated in a mutual encounter between combatants fighting on equal terms. They further falsely assume as a truism, that an ordinary pocket-knife, capable in its use of producing death, may not be a deadly weapon.

The fifth charge was also properly refused. Dying declarations are not admissible in evidence merely on the ground that they are not wilfully or intentionally false. They are admitted rather from the necessity of the case, in order to bring manslayers to justice, and because, being uttered under a sense of impending death, the solemnity of the occasion is tantamount to the safeguard of an oath.

If these declarations pointed to the identity of the defendant, as the perpetrator of the killing, with the same clearness and certainty as if the deceased had designated him by name, they were entitled to as much weight on the part of the jury as if defendant's name had been expressly mentioned. We understand the second charge, given on request of the solicitor, to only assert this view.

The third charge, given on request of the solicitor, was also unobjectionable. The flight of a defendant may or may not be considered as a circumstance tending to prove guilt, as this depends upon whether the motive of such flight had its origin in a consciousness of guilt, and a pending apprehension of being brought to justice; or whether, on the other hand, it can be explained as attributable to other and more innocent motives.

The first charge given at the instance of the solicitor was obscure and involved in meaning, and was not entirely free, perhaps, from the vice of being misleading. This, however, could have been corrected by requesting a counter explanatory charge in behalf of the defendant.

There is nothing in the other exceptions to the evidence.

For the error in the record first mentioned, the judgment of the City Court must be reversed and the cause remanded for a new trial. In the meanwhile the prisoner will be held in custody until discharged by due course of law.