[Planters' and Merchants' Insurance Co. v. Tunstall.]

# Planters' and Merchants' Insurance Co. *v.* Tunstall.

*Action for Money Had and Received, under Common and Special Counts.*

1. *Assignment of promissory note by separate writing.*—As between the assignor and assignee, a valid assignment of a promissory note may be made by a separate instrument of writing, without indorsement or delivery of the note, and without notice to the maker; and an antecedent debt, or existing liability, is a sufficient consideration to support such assignment.

2. *Same; when note is held by adverse claimant.*—Such an assignment, transferring the entire interest in the note, is not contrary to public policy, nor void for maintenance or champerty, because the note is at the time in the hands of a third person, claiming adversely to the assignor, or as collateral security for a debt due from him; but, until notice of the assignment is given to the maker and holder, all dealings between them and the assignor in reference to the note, if made in good faith, and for valuable consideration, will be protected.

3. *When action lies for money had and received.*—An action for money had and received is an equitable remedy, and lies whenever the defendant has received money which in good conscience he ought not to retain, and which, *ex æquo et bono*, belongs to the plaintiff.

4. *Embezzlement and larceny; at common law, and by statute.*—At common law, embezzlement was a mere breach of trust, and not an indictable offense, unless the act amounted to larceny; and the statutes in reference to embezzlement by clerks, agents, &c. (Code, §§ 4377, '83, '84), embrace some acts which were larceny at common law, as well as acts which were mere breaches of trust.

5. *Disqualification of witness by conviction of infamous offense.*—A conviction of the common-law offense of larceny renders a person incompetent as a witness; but a conviction of the statutory offense of embezzlement does not have that effect, unless the particular act would have been larceny at common law.

6. *Same; presumption in favor of judgment.*—When objection is made to the competency of a witness, on account of a conviction of embezzlement, and the objection is sustained by the court below, this court will indulge the presumption, unless the record repels it, that the act would have been larceny at common law.

7. *Depositions of convicts in penitentiary.*—The statutory provisions regulating the taking of the depositions of convicts in the penitentiary (Code, §§ 4613–14), has no reference to their competency, but leaves that to be determined by the general law.

8. *Objection to competency of witness; when made, or waived.*—Cross-examining, without objection, a witness whose deposition is taken, is a waiver of objection to his competency; but, when there is no cross-examination, or filing of cross-interrogatories, the objection may be made at any time before the trial is begun.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

This action was brought by Wiley C. Tunstall, against the appellant, a domestic corporation; and was commenced on the 18th May, 1878. The complaint contained the common count for money had and received, and two special counts, each averring the circumstances under which the money sued for was collected and received by the defendant. There were demurrers to the special counts, assigning specially several causes of demurrer; which were overruled by the court, and which it is not necessary to state, since the same questions were raised by the charges asked and refused, after stated; and the demurrers being overruled, the general issue was pleaded to all of the counts.

Before entering on the trial, the plaintiff moved to suppress the deposition of C. A. Lathrop, a convict in the penitentiary, which had been taken on interrogatories filed by the defendant. The ground of the motion was, "that said Lathrop, before the taking of his said deposition, had been tried and convicted, in said City Court, of and for the crime of embezzlement, and sentenced to imprisonment in the penitentiary, and was confined in the penitentiary under his said sentence when his deposition was taken, and was therefore incompetent as a witness." "It was admitted," the bill of exceptions recites, "that said Lathrop was so convicted, sentenced, and confined; but they insisted that this did not render him incompetent as a witness, and that the objection was raised too late, as the plaintiff had due notice, when the interrogatories were filed and served, that said Lathrop was then a convict in the penitentiary." The court sustained the motion, and suppressed the deposition; to which an exception was duly reserved by the defendant.

The money sued for, amounting to somewhat less than one thousand dollars, was the proceeds of a promissory note executed by one S. T. Prince, or the money realized by the defendant from the sale of certain bonds which Prince had transferred and delivered in compromise and settlement of his note. The plaintiff claimed the note under a written transfer by one D. T. Webster, made in the name of D. T. Webster & Co., which was dated Mobile, January 17, 1877, and in these words: "I transfer to W. C. Tunstall a promissory note on S. T. Prince for about three thousand dollars, payable to D. T. Webster & Co., or Webster & Wilson; which note is in the hands of the Planters' and Merchants' Insurance Company, and which they will please deliver to said Tunstall on demand. The above transfer is made as collateral security for an indebtedness due to the said W. C. Tunstall." The note of Prince was payable to Webster & Wilson, who were commission-merchants in Mo-

bile in 1873, or to their successor, D. T. Webster, who continued their business under the name of D. T. Webster & Co.; and it was acquired by the defendant under the following circumstances: Tunstall, the plaintiff, was a planter, residing in the country, and having dealings with said firms in Mobile, who made advances to him from time to time, and sold his crops; and he was indebted to them, at the time of the change of the firm, in a large amount, for which they held his two promissory notes of $4,000 each; one of which notes was transferred by Webster to the defendant insurance company, as collateral security for money loaned to him by the company. On a settlement or statement of accounts between plaintiff and Webster, in the summer of 1874, plaintiff being found indebted in the amount of about $7,000, and desiring additional advances to the amount of $1,000 or $1,500, executed several new notes, aggregating the whole amount, and delivered them to Webster, on the latter's promise to forward the old notes on his return to Mobile; but, instead of doing this, he used the new notes also, as he had used the old notes for which they were to be substituted, by transferring them as collateral security to several of his creditors. Plaintiff demanding the return of his old notes, Webster went to the president of the defendant insurance company, and offered to substitute the note on Prince for the $4,000 note of plaintiff which the company then held; but the president, declaring that he had no authority to make the substitution, offered to submit the proposal to the proper committee, and Webster left the note of Prince with him for that purpose. The proposal was submitted to the committee, and was rejected by them; but the note of Prince was not returned to Webster, being left with the officers of the company, or retained by them; and they afterwards claimed to hold it as collateral security for Webster's indebtedness. Plaintiff was afterwards sued on his note for $4,000 held by the defendant, and settled the debt by compromise; and Webster, while that suit was pending, transferred to him the said note of Prince, as shown by the written transfer, telling him that the defendant had no right to hold it. A written demand for the note was made by plaintiff on defendant, on the 3d November, 1877; to which the defendant replied, that the note had been settled and surrendered, with the consent and approval of Webster, on the 27th March, 1877.

On these facts, the defendant requested the following charges, which were in writing:

"1. If the jury find from the evidence that, before and at the time when the note of Prince to Webster & Wilson was delivered by Webster to the defendant, said note was past due; and that said Webster was then indebted to the defendant in

[Planters' and Merchants' Insurance Co. v. Tunstall.]

an amount exceeding the amount of said note; and that Webster afterwards demanded said note of the defendant, and the defendant refused to deliver it to him, claiming a right to hold it adversely to said Webster, as collateral security for the payment of Webster's said indebtedness; and that afterwards, while said note was in the possession of, and held by defendant, said Webster assigned said note to plaintiff by the separate written instrument read in evidence, without the knowledge or consent of the defendant, then the plaintiff had no right to recover of the defendant, in this action, money afterwards collected by the defendant on said note.

"2.  If the jury find from the evidence that, at the time of the said assignment of Prince's note by said Webster to plaintiff, said note was past-due, and was not then in the possession of said Webster, but was in the possession of the defendant, claiming a right to hold it as collateral security for the payment of a large indebtedness then and now due from said Webster; and that said assignment to the plaintiff was not made for any valuable consideration then given therefor, but only as indemnity for any loss to which plaintiff might be subjected by reason of notes which he had given to said Webster, or to Webster & Wilson; and if the jury further find that the defendant afterwards, before it had any notice or knowledge of said assignment to plaintiff, did, with the knowledge and consent of said Webster, compromise and settle said note of Prince, by receiving in satisfaction thereof certain bonds, which were afterwards sold, and the proceeds of sale applied, *pro tanto*, to the payment of Webster's indebtedness to the defendant; and if they further find that it is not shown by the evidence that the defendant, before or at the time of such settlement, compromise and application of proceeds, had any notice or knowledge of said assignment to plaintiff, then plaintiff has no right to recover of the defendant, in this action, the amount of said note, or the proceeds of said compromise and settlement, and the jury should find for the defendant.

"3.   If the jury find from the evidence that the assignment of Prince's said note was made by said Webster to plaintiff by the written assignment given in evidence, and was made after the maturity of said note, and for the purpose expressed in said assignment; said assignment gave to the plaintiff a right of action on said note against said Prince, but no right of action thereon against the defendant; and if they further find from the evidence that, at the time of said assignment, plaintiff knew that said note was in the defendant's possession, and further find that the defendant, with the knowledge and consent of said Webster, afterwards compromised said note with said Prince, and applied the proceeds of said compromise and

settlement to the payment, *pro tanto*, of an indebtedness of said Webster to the defendant; and that such compromise, settlement and application of proceeds was made by the defendant before it had any notice or knowledge of said assignment to the plaintiff, the burden of proving such prior notice or knowledge is on the plaintiff, and without such proof the plaintiff is not entitled to recover of the defendant, in this action, the proceeds of said compromise and settlement.

"4. If the jury find from the evidence that the said assignment of the note by Webster to plaintiff was made after the maturity of the note, and that plaintiff then knew that said note was at that time in the defendant's possession; and they further find that afterwards, before the defendant had notice of such assignment, said defendant did, with the knowledge and consent of said Webster, compromise and settle said note with said Prince, and apply the proceeds of such settlement to the part payment of said Webster's indebtedness to the defendant, such action and consent of said Webster did authorize the defendant to make such compromise, settlement, and application of proceeds, whether the defendant had, or had not, previously, wrongfully acquired or withheld said note from Webster, and the plaintiff is not entitled, in this action, to recover of the defendant the proceeds of such compromise."

The court refused each of these charges, and the defendant excepted to their refusal; and their refusal is now assigned as error, together with the overruling of the demurrers to the complaint, and the several rulings on the evidence to which exceptions were reserved.

WM. G. JONES, and OVERALL & BESTOR, for appellant.—(1.) The defendant came lawfully into the possession of the Prince note, long before any attempted assignment of said note to Tunstall, and had no notice of any such assignment until long after the note had been compromised and settled, with the consent of Webster, and the money had been applied in partial satisfaction of Webster's debt to the defendant. An assignment of a chose in action is not complete, until notice to the debtor; and when made assignable by statute, the assignment may be good without notice, but only when accompanied by actual delivery.—*Hobson v. Stevenson*, 1 Cooper, 205; *Gayoso Savings Institute v. Fellows*, 6 Coldw. Tenn. 467–73; *Palmer v. Merrill*, 6 Cush. Mass. 282–86; *Blackman v. Lehman, Durr & Co.*, 63 Ala. 550. (2.) Plaintiff's own negligence enabled Webster to perpetrate this fraud, by which either he or defendant must lose; and as between them, the loss must fall on plaintiff.—*Young & Son v. Lehman, Durr & Co.*, 63 Ala. 519. (3.) The deposition of Lathrop ought not to have been

suppressed.   At common law, embezzlement was not a criminal offense; and the common-law rule, as to the competency of witnesses convicted of infamous offenses, is unchanged by statute in this particular.—*Harrison v. The State,* 55 Ala. 239; *Taylor v. The State,* 62 Ala. 164.   The manner of taking the depositions of convicts in the penitentiary is prescribed by the statute (Code, §§ 4613–14), which was strictly followed; and depositions thus taken are made competent evidence.   (4.)   If the witness was incompetent, the objection to the deposition came too late. *Gray's Executors v. Brown,* 22 Ala. 262; 1 Greenl. Ev. § 421.

G. L. SMITH, *contra.*—(1.)   A promissory note, not payable at a bank or banking house, is not commercial paper, and may be assigned like any other evidence of debt, or like a chattel. *Lampkin v. Phillips,* 9 Porter, 98; *Hall & Saunders v. P. & M. Bank,* 6 Ala. 761; *Gookin v. Richardson,* 11 Ala. 889. If payable at a bank, it loses its commercial qualities when past due, and may then be assigned like any other *chose,* or like a chattel: and it is no objection to its assignment, that it is at the time held by a wrongdoer, or by virtue of a tort.—*Hinton v. Nelson,* 13 Ala. 226; *Brown v. Lipscomb,* 9 Porter, 472.   (2.) The action is not founded on the note, but to recover its proceeds as money had and received.   The action is an equitable one, and lies whenever the defendant has money which, in equity and good conscience, belongs to the plaintiff.—1 Brick. Digest, 140, § 72; 9 Porter, 98; 6 Ala. 716; 11 Ala. 889.   The defendant was without right to the note, acquiring and holding it merely as a wrongdoer; and was neither entitled to notice of the assignment, nor injured by the want of it.—*East v. Pace,* 57 Ala. 521; *Folmar v. Brantley,* 57 Ala. 588.   (3.)   Lathrop was disqualified as a witness by his conviction of embezzlement. *Taylor v. The State,* 62 Ala. 164.   The objection to the deposition was made at the earliest opportunity, and did not come too late.   No notice was given of the filing of the interrogatories, and there was no cross-examination.

BRICKELL, C. J.—The demurrers to the complaint, and the instructions requested and refused, embrace the same questions:   1.   Whether the assignment of a promissory note by a separate instrument in writing, though founded on a valuable consideration, is complete, passing to the assignee the equitable title to the note, before its delivery, or without notice to the maker?   2.   If, at the time of the assignment, the note is held and claimed adversely to the assignor, is not the assignment void as savoring of champerty or maintenance?

The general principles governing the assignment of choses in action, and the rights passing to the assignee, seem to be well

and definitely settled. The doctrine of the common law was, originally, that to a stranger they were incapable of transfer, for the same reason that things lying in entry or re-entry could not be granted. The doctrine never prevailed in courts of equity; and in courts of law it was gradually modified, until such assignments were recognized, and, though in the name of the assignor the assignee may have been compelled to pursue legal remedies, the court protected him against any unconscientious conduct of the assignor,—against his acts or admissions subsequent to the assignment. It was said by a learned judge, "that if an assignee of a chose in action have an equity, that equity shall be no exile to the courts of common law."—Edwards on Notes & Bills, 53; *Lamkin v. Phillips*, 9 Porter, 98; *Chisholm v. Newton*, 1 Ala. 371; *Brown v. Foster*, 4 *Ib.* 382; *Vickers v. Mooney*, 6 *Ib.* 99. The assignment did not pass the legal title to the note. That was incapable of transfer, otherwise than by an indorsement, and delivery of the note. Before the present statute, if the assignee had been compelled to sue the maker, or any other party to the note, and the assignment passes an equity, the suit must have been prosecuted in the name of the assignor, in whom the legal title resided. Under the statute, the suit must have been prosecuted in the name of the assignee, having the equitable or beneficial interest.—Code of 1876, § 2890.

Though the assignment was not operative to pass the legal title to the note, if founded on a valuable consideration, it would create a right and equity which a court of equity would compel the assignor, and all claiming under him with notice, to carry into effect, upon the same principles, and for the same reasons, on which the execution or performance of other contracts would be compelled. The form of the assignment is not important. "Any words, in fact, are sufficient, which show an intention of transferring or appropriating the *chose* in action to or for the use of the assignee." Any thing which shows, on the one side, the intention to assign, and from which the assent of the other to receive may be inferred, if there is a valuable consideration, in the contemplation of a court of equity will operate as an assignment.—3 Lead. Cases Eq. 357; 2 Story's Eq. § 1047. "Every such assignment" says Judge Story, "is considered, in a court of equity, as in its nature amounting to a declaration of trust, and to an agreement to permit the assignee to make use of the name of the assignor, in order to recover the debt, or to reduce the property to possession."—2 Story's Eq. § 1040.

The sufficiency of the consideration for the assignment—the security of an antecedent debt, or indemnity for an existing liability for which the assignor was primarily liable—is not questioned. If the consideration for an assignment be valuable, it is not necessary that it should be contemporaneous, or executory.

[Planters' and Merchants' Insurance Co. v. Tunstall.]

An antecedent debt, or a pre-existing obligation or duty, as between the assignor and assignee, is sufficient; " for an existing obligation is a sufficient cause for every transaction, tending directly or indirectly to its fulfillment."—3 Lead. Cases Eq. 368. In its terms, the assignment is unequivocal, denoting plainly the intention to pass to the assignee dominion and control over the note.

The assignment being in its terms unequivocal, transferring by appropriate words the note and all control over it, and having a valuable consideration to support it, creating a trust a court of equity would enforce, was irrevocable by any rightful act of the assignor. As between the assignor and the assignee, no other or further act was necessary to its completion, or to its validity.— *Wood v. Partridge*, 11 Mass. 488 ; *Muir v. Schenck*, 3 Hill (N. Y.) 228.

In order that third persons—the maker, or any other party to the note, or the holder, whether he be the bailee or the agent of the assignor; or, as in this case is claimed, having possession and claiming adversely to the assignor—may be bound or affected by the assignment, notice of it ought to have been given them ; and not being informed of facts which ought to have put them on inquiry, all dealings they had with the assignor, in good faith, and upon a valuable consideration, would be protected. If the assignee desired to protect himself against such dealings,—if a conversion of the assignment into a complete title *in rem*, and not merely a right perfect as against the assignor, had been invoked by the assignee—notice thereof was necessary. But, if he was willing to trust the good faith of the assignor—if he was satisfied that he would not take advantage of the want of notice to enter into dealings and transactions with any party to the note, or with the holder—notice was not necessary. Without notice, without a delivery of the note, as against the assignor, the assignment was complete.—*Dearle v. Hall*, 3 Russell, 1, cited in 3 Lead. Cases Eq. 320–21; *Wood v. Partridge, supra.* There is some diversity of opinion, whether subsequent purchasers or assignees, not having notice, would be protected against the prior equity of the assignee. This case does not involve the rights of any subsequent assignee or purchaser, or of any dealings with the assignor subsequent to the assignment.

The assignment does not contravene public policy, because at the time it was made the appellant had possession of the note, claiming to hold it as collateral security for debts due from the assignor. The assignment was of the entire interest in the note, and there was in it no element of champerty or maintenance. It is the settled doctrine of a court of equity, that assignments of the whole interest in a contract or other security, when not

savoring of maintenance or champerty, even though at the time of the assignment they are the subjects of pending suits, will be supported.—2 Story's Eq. §§ 1051–55. Whether the appellant had any just claim to the note as collateral security for debts of the assignor, is a question which we presume was properly submitted to the jury. However this may be, the case is now presented as if it were a false clamor. The money received by the appellant in satisfaction of the note, was the money of the appellee, in whom the equitable title to the note resided. An action for money had and received is an equitable remedy, and may be supported, when the defendant has received money which, in good conscience, he ought not to retain, and which, ex æquo et bono, belongs to the plaintiff.—1 Brick. Dig. §§ 140, 572.

The only remaining question, of any importance, is the competency of Lathrop as a witness; and we have had much difficulty in reaching a satisfactory solution of it. Embezzlement, at the common law, unless it amounted to larceny, was a mere breach of trust, and not indictable. As it is defined, described and punished under our statutes, it embraces acts which at common law were mere breaches of trust, and other acts which were larceny. These are all visited with the same punishment as larceny; the grade of the offense, and the severity of punishment, depending upon the value of the goods embezzled.—Code, §§ 4377–79, '81, '83, '84. The section of the Code, under which it is probable Lathrop was convicted, is section 4377, declaring that "any officer, agent or clerk of any incorporated company, or clerk, agent, servant or apprentice of any private person or persons, who embezzles, or fraudulently converts to his own use, or fraudulently secretes with intent to convert to his own use, any money or property which has come into his possession by virtue of his employment, must be punished, on conviction, as if he had stolen it." It is obvious, under this statute, a conviction could be had, though the money or property was in the constructive possession of the company, or of the employer, the clerk, servant, or agent, &c., having the bare charge and oversight. And it is certain that, if he had only a bare charge and oversight, the company or employer having the constructive possession, and fraudulently converted the goods to his own use, he was guilty of larceny at common law, and upon conviction he would have been rendered infamous, and disqualified as a witness in any case, civil or criminal.—*Taylor v. State*, 62 Ala. 164; *Sylvester v. State*, at present term.

We are not informed by the bill of exceptions whether the conviction of Lathrop was for acts which at the common law were mere breaches of trusts, or for acts which would have constituted larceny. It may be, that if a statute declares criminal acts which at common law were civil wrongs only, a con-

[Lipscomb v. McClellan.]

viction of them, though punished as felonies, would not render the person convicted infamous, and disqualify him as a witness. *Harrison v. State*, 55 Ala. 239. But a conviction of acts which were at common law of the nature of the *crimen falsi*, and punished, though under a statute which merely changes their denomination, must be followed by the same incidents which would have followed at common law, unless these are qualified by the statute.—Bish. Stat. Crimes, § 139. We can not indulge the presumption, to place the City Court in error, that the conviction of Lathrop was of acts which at the common law were breaches of trust and not larceny. That presumption must be indulged, before we could pronounce that he was a competent witness.

The statutes which authorize the taking of the depositions of persons confined in the penitentiary, has no reference to, and was not intended to enlarge their competency as witnesses. The only purpose it was intended to accomplish, was to provide a mode by which the evidence of such persons, when competent witnesses, could be obtained speedily. It would be a little singular, if a person convicted of an infamous offense was rendered competent, while under the conviction he was suffering punishment, and incompetent so soon as he had endured the punishment to its utmost.

A party cross-examining without objection a witness whose deposition is taken, is deemed to waive all objections to the competency of the witness. But if he does not cross-examine, it is sufficient if the objection is made before entering on the trial.

Affirmed.