## UNITED STATES v. SIMS.

(Circuit Court, N. D. Alabama, S. D. December 23, 1907.)

1. WITNESSES—COMPETENCY—HOW PROVEN.
   The competency of a witness, as affected by a former conviction of crime, must be determined alone from the record of a court of competent jurisdiction in which the conviction was obtained.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 199.]

2. COURTS—COMMON LAW PREVAILS.
   The rule in relation to the competency of witnesses, as affected by state statutes, does not apply in criminal cases in the courts of the United States, but their competency must be determined therein under the common law.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 925.]

3. WITNESSES—COMMON LAW—EMBEZZLEMENT.
   Under the common law a conviction of the crime of embezzlement, as described in section 5209, Rev. St. (U. S. Comp. St. 1901, p. 3497), does

not disqualify a witness, because such offense is not embraced within the three disqualifying classes, treason, felony, and the crimen falsi (citing Words and Phrases, vol. 2, p. 1741).

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 109–118.]

**4. SAME—CONVICTION UNDER FEDERAL STATUTE.**

Embezzlement, of the kind provided for in section 5209, Rev. St. (U. S. Comp. St. 1901, p. 3497), is a misdemeanor, and under the common law was merely a breach of trust; hence a conviction thereunder does not disqualify a witness in a criminal case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 109–118.]

**5. SAME—MODERN LEGISLATION AND DECISIONS.**

It is the tendency of modern legislation and decision to broaden the field of the competency of witnesses and to restrict that of incompetency. No witness, therefore, who has been convicted of crime, should be excluded from the stand, unless settled principles or precedents absolutely force such a construction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 109–118.]

(Syllabus by the Court.)

Indictment for Aiding and Abetting in Embezzling the Funds of a National Bank. Upon motion to exclude from the witnesses sworn for the government Alexander R. Chisolm, a witness formerly convicted of embezzlement in the Circuit Court of the United States.

O. D. Street, U. S. Dist. Atty., and Lee Bradley, special counsel, for the United States.

James Weatherly; John H. Bankhead, Jr., and Lee Cowart, for defendant.

HUNDLEY, District Judge. The question here presented is one of great moment, not only to the prosecution in this case, but to the defendant as well. The result of the conclusion reached by the court may determine, possibly, the guilt or innocence of this defendant. I have listened with interest and instruction to the able arguments made by counsel for the government, as well as for the defendant. The government now seeks to introduce as a witness upon the trial of this cause Alexander R. Chisolm, who was formerly convicted in this court of the offense of embezzlement of the funds of a national banking association. The defense objects to this person being sworn as a witness, upon the grounds that he is disqualified to testify on account of such conviction, and moves that he be excluded from the witness stand. The conviction of Chisolm was under section 5209, Rev. St. U. S. (U. S. Comp. St. 1901, p. 3497), which is the same statute under which this defendant was indicted and is now upon trial. In support of this motion, and in addition to the records showing the conviction, sentence, and incarceration in the federal penitentiary of the witness Chisolm, certain oral evidence is sought to be introduced by the defendant, tending to show the nature of the testimony upon which Chisolm was convicted. Such oral testimony is not such evidence as the court may look to in deciding the question at issue. The competency or incompetency of a witness on account of a former conviction

161 F.—64

for an offense must be determined, and determined only, upon the record of that conviction before a court of competent jurisdiction.

The rule as to the competency of witnesses, as laid down by the statutes of the various states, does not apply in the courts of the United States in the trial of criminal cases. The statute of Alabama relating to the competency of witnesses, therefore, has no application here. The question of the competency of Chisolm as a witness must be determined upon common-law principles, except in so far as those principles may have been modified by federal statute and the decisions of the federal courts. We must consider the question, also, in the light of modern legislation and the tendency of the courts to broaden the field of the competency of witnesses and to restrict that of incompetency. Therefore no witness, who has been convicted of a crime, should be excluded from the witness stand, unless settled principles or precedents absolutely force such a construction. Comparing the theory of the common law with modern tendencies as to the competency of witnesses, the Supreme Court of the United States, in the case of Benson v. United States, 146 U. S. 336, 337, 13 Sup. Ct. 63, 36 L. Ed. 991, says:

"Indeed, the theory of the common law was to admit to the witness stand only those presumably honest, appreciating the sanctity of an oath, unaffected as a party by the result, and free from any temptations of interest. The courts were afraid to trust the intelligence of jurors. But the last 50 years have wrought a great change in these respects, and to-day the tendency is to enlarge the domain of competency and to submit to the jury for their consideration as to the credibility of the witness those matters which heretofore were ruled sufficient to justify his exclusion."

It is upon the broad principles as thus stated by the Supreme Court that I shall consider the competency vel non of the witness Chisolm. Many authorities are cited and argument is made to me by counsel for the defendant that the Supreme Court of the United States, in deciding the question of whether or not a party can be proceeded against under this statute (section 5209, supra) for the commission of the offense therein designated by information instead of indictment, has held that where the party is charged with an offense infamous in its nature he must be proceeded against by indictment rather than by information. The argument is made here also in this same connection that, if a party must be proceeded against by indictment rather than by information for an offense created by the statute, a person convicted of such offense is disqualified to testify as a witness in a court of justice because he is rendered infamous by such conviction. There is no doubt about the proposition that for such an offense as this the party must be proceeded against by indictment, rather than by information; but what is the reason for the rule thus laid down by the Supreme Court of the United States in such cases? It is based upon the principle that in such cases the interests of the defendant primarily are at stake, and his rights as prescribed by the Constitution of the United States are invoked for his protection. Upon such a question the Supreme Court of the United States follows the general rule of the courts of this country, which is to give every man charged with an

offense of a serious nature the highest protection afforded him by the Constitution and laws of the country, so as to insure to him the constitutional guaranty that he must be proceeded against only by due form of law. Upon the question merely of the competency of a witness to testify, the interests of the defendant are not alone involved, but those of the government are involved as well. It is the good order of society which is at stake, and the right that the "whole truth and nothing but the truth" shall be presented before the court, rather than the technical guaranty to him of being proceeded against according to the forms of law. The distinction is well stated in the case of Ex parte Wilson, 114 U. S. 423, 58 Sup. Ct. 938, 29 L. Ed. 89, as follows:

"Whether a convict shall be permitted to testify is not governed by a regard to his rights or to his protection, but by the consideration whether the law deems his testimony worthy of credit upon the trial of the rights of others. But whether a man shall be put upon his trial for crime without a presentment or indictment by a grand jury of his fellow citizens depends upon the consequences to himself if he shall be found guilty."

This broadening of the lines of judicial construction upon the competency of a witness has been wrought in this country partly by legislation and partly by judicial construction. By Act Cong. July 2, 1864, c. 210, 13 Stat. 351 (Rev. St. § 858), it was enacted that:

"In the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action because he is a party to, or interested in, the issue tried."

With a proviso by and against executors, etc., on March 16, 1878, Congress also passed an act permitting the defendant in criminal cases to testify at his own request. Act March 16, 1878, c. 37, 20 Stat. 30 (U. S. Comp. St. 1901, p. 660). Under the statute under which the indictment in this case is filed, if there had been no severance and the defendants had been tried jointly, either would have been a competent witness in the case, if he so desired, and, though the testimony of one bore against the other, it would have been none the less competent. The statute in terms places no limitation on the scope of testimony, for its language is:

"The person so charged shall of his own request, but not otherwise, be a competent witness."

His competency being thus established, the limits of examination are those which apply to all other witnesses. Legislation of a similar import prevails in most of the states. The spirit of this legislation has controlled the decisions of the courts, and steadily one by one the merely technical barriers which excluded witnesses from the stand have been removed, until it is now generally, though not universally, held that no one is excluded therefrom, unless the lips of the originally adverse party are closed in death, or unless some one of those peculiarly confidential relations, like those of husband and wife, forbids the breaking of silence. Benson Case, supra.

It is contended by counsel for the defendant that, if the competency of this witness must be determined by the rule of the common law, then it must be determined, not alone by what is termed the common

law of England, but also by what is known as the common law of America. In this connection it is contended that the common law of America also included the statutes of England, and that under the statutory enactments of England (St. 21 Hen. VIII, c. 7) embezzlement is a felony, and therefore one convicted of embezzlement is disqualified as a witness to testify in any case. Because that statute was enacted prior to the settlement of America, the conclusion is drawn that the statute became a part of our common law. It is well settled that at common law the only offenses that disqualify a witness are of three classes, and three classes only, viz., treason, felony, and the crimen falsi. Ex parte Wilson, 114 U. S. 417, 5 Sup. Ct. 935, 29 L. Ed. 89; 16 A. & E. Enc. of L. (2d Ed.) pp. 246, 247; 2 Words & Phrases, p. 1741.[1] The offense of which Chisolm was convicted is, of course, not treason; neither is it, under the federal statutes, a felony. Section 5209, Rev. St. It is insisted, however, that, if embezzlement was a felony at common law, then its disqualifying effects are the same, though the federal statute reduces it to the grade of a misdemeanor, and the case of Sylvester v. State, 71 Ala. 25, is cited in support of this proposition; but I do not think that case decisive of the question at issue. It is true in that case that the court says:

"At common law persons convicted of crimes, which are in themselves infamous, were excluded from being a witness."

But the court goes further, and states what kinds of crimes were designated as infamous at common law, and states the rule to be:

"An infamous crime was regarded as comprehending treason, felony, and the crimen falsi."

See, also, Taylor v. State, 62 Ala. 164.

Again, comparing the facts constituting the offense described in section 5209, Rev. St., with the common-law rule, I am of the opinion that there is ample authority to sustain the proposition that embezzlement of this kind was at common law no offense at all, but a mere breach of trust. The following authorities sustain this statement of the law: In the case of Planters' & Merchants' Insurance Company v. Tunstall, 72 Ala. 142, the court says:

"It may be that, if the statute declares criminal acts which at common law were civil wrongs only, a conviction of them, though the punishment is felonious, would not render a person infamous and disqualify him as a witness." Harrison v. State, 55 Ala. 239.

See, also, In re Richter (D. C.) 100 Fed. 295; 2 Bishop on Criminal Law, §§ 318–320; 3 Words & Phrases, p. 2353; Wright v. Lindsay, 20 Ala. 428; 15 Cyc. 488–490; 10 A. & E. Enc. of L. (2d Ed.) p. 978; 2 Sup. A. & E. Enc. of L. p. 314, note 3; 6 A. & E. Enc. of L. (1st Ed.) p. 451.

In the face of all these numerous authorities, it is contended with great earnestness and a display of great ability by counsel for the defendant that during the reign of Henry VIII an embezzlement statute of a very limited character was enacted by the Parliament of England, and, inasmuch as that was prior to the settlement of America, this

statute became a part of the common law of America. In only two states have I been able to find that this statute became a part of the common law, viz., Pennsylvania and Vermont. In Pennsylvania, at least, this conclusion is traceable to a statutory enactment, which provides for the adoption in Pennsylvania, not only of England's common law, but of England's statutes down to a comparatively recent date. But, whatever may be the rule in Pennsylvania or Vermont, it is very clear that embezzlement was no crime under the common law of Alabama. It is worthy of note that Mr. Bishop, in discussing this statute of Henry VIII, pronounces it as having provided for no more than what was already larceny at common law. 2 Bish. Crim. Law, §§ 318–320. It must not be forgotten that it is well settled that at common law the infamy which disqualified a convict as a witness depended upon the character of his crime and not upon the nature of his punishment. Schuylkill County v. Copley, 67 Pa. 386, 5 Am. Rep. 441; 1 Greenleaf's Ev. § 372, note 3; Ex parte Wilson, 114 U. S. 417, 5 Sup. Ct. 935, 29 L. Ed. 89. While the punishment under the statute—section 5209, Rev. St.—may be by imprisonment in the penitentiary, yet the crime designated thereby is only a misdemeanor.

Again, the argument is made in this connection that if larceny was infamous at common law, and disqualified a witness convicted thereof, and as there is no difference between larceny and embezzlement, except the technical difference of asportavit in the one case and not in the other, then embezzlement also disqualifies. This is not the only difference. In larceny there must be not only the taking, but the animus furandi. This criminal intent is the more vital element distinguishing larceny from embezzlement than that of the taking, though it is true that both distinctions exist between these two crimes. The observations of the Supreme Court of the United States on the difference between abstraction and embezzlement in the Northway Case, 120 U. S. 335, 7 Sup. Ct. 585, 30 L. Ed. 664, are justified as pertinent to the distinction between embezzlement and larceny. Says the Supreme Court in that case:

"But in the next place, we do not admit the proposition that the offense of 'abstracting' the funds of the bank under this section is necessarily equivalent to the offense of larceny. The offense of larceny is not complete without the animus furandi, the intent to deprive the owner of his property; but under section 5209 an officer of the bank may be guilty of 'abstracting' the funds and money and credits of the bank without that particular intent. The statute may be satisfied with an intent to injure or defraud some other company, body politic or corporate, or individual person, than the banking association whose property is abstracted, or merely to deceive some other officer of the association, or an agent appointed to examine its affairs. This intent may exist in a case of abstracting, without that intent which is necessary to constitute the offense of stealing."

Upon a careful reading of St. 21 Hen. VIII, c. 7, which is cited and relied upon by counsel for defendant to establish the doctrine that embezzlement is a felony at common law, and comparing that statute with section 5209, Rev. St., it will be seen that the distinction drawn in the Northway Case, supra, readily appears. In the English statute, the

embezzlement or appropriation of a thing taken must be "with like purpose to steal it." 2 Bishop, Crim. Law, § 319. The "purpose to steal" is not designated in section 5209, but the purpose or intent therein stated is "to injure or defraud the association, or some other company," etc. It is plain, therefore, that embezzlement of the kind designated in section 5209, Rev. St. U. S., is not larceny as defined at common law. The Supreme Court of Alabama in the case of Planters' & Merchants' Insurance Company v. Tunstall, 72 Ala. 142, very clearly draws the distinction that, while a conviction of the common-law offense of larceny renders a person incompetent as a witness, a conviction of the statutory offense of embezzlement does not have that effect, unless the particular act would have been larceny at common law. Again, the statute of Henry VIII contains a proviso that the act shall not extend to "any apprentice or apprentices, nor to any person within the age of eighteen years," etc. Thus it will be seen that, if I apply the rule as to the competency of this witness contended for by defendant's counsel, I must hold that if Chisolm was an apprentice, or within the age of 18 years, he is a competent witness; otherwise, he is not. I know of no state in which any such rule has ever been enforced. From the conclusions herein reached, I am forced, therefore, to the conclusion that embezzlement by a national bank officer, as defined by section 5209, is a felony neither at common law nor by statute.

The only remaining question is, does embezzlement fall within the meaning of the term, "crimen falsi"? It is abundantly settled that, in order to fall within this designation, a crime must be of such a character that it not only carries with it the element of falsehood, but it must be of such a nature as tends to obstruct the administration of public justice. It is clear that the offense of which Chisolm was convicted fulfills neither of these conditions. It is not a crime of falsehood, neither does it tend in any wise to obstruct the administration of justice.

The witness Chisolm is competent to testify in this case, the weight to be given to his testimony to be determined by the jury in connection with the fact of his conviction and under the rules of law relating to the testimony of accomplices. The motion to exclude Chisholm as a witness is therefore overruled.