# Lee et al. v. Wimberly.

*Action to enforce Material-man's Lien.*

1. *Material-man's liens; fatal variance.*—Where, in an action to enforce a material-man's lien, the complaint alleges a sale of material to the contractors and owner of the building, as joint purchasers, and declares against them as joint debtors, and the evidence shows a sale to only the contractors, who were the only debtors, there is a fatal variance between the allegations of the complaint and the proof, which prevents a recovery.

2. *Same; owner a proper party defendant.*—In an action to enforce a material-man's lien, where the material was sold to the contractors only, and not to the owner of the building, in order to bind the owner and fasten a lien on the building, he should be made a party defendant by appropriate allegations showing his true relation to the subject matter of the suit; but he can not be sued as a joint purchaser and debtor.

3. *Partnership; whether created, how determined.*—In determining whether a partnership exists, as between the parties themselves, the test generally is, whether there is a community of interest, a partici-

[Lee *et al.* v. Wimberly.]

pation in losses as well as profits; but this test does not apply when a party, without interest in the capital or business, is merely to be compensated for his services from the profits, if any, resulting from a common enterprise. In such case the relation of the parties is not that of partners; and no recovery can be had in an action where the plaintiff declares against such party as a joint debtor with the partners by whom he was employed.

4. *Same; effect of death of one partner.*—The death of one of two partners dissolves the partnership, and the accounts of the firm vest exclusively in the surviving partner for the purpose of liquidation and settlement of the partnership business, and as surviving partner he has authority to transfer such accounts for the payment or security of partnership liabilities.

5. *Same; same.*—Where one of two partners dies, and his widow and the surviving partner carry on the business under the old firm name, a new partnership is thereby created, although they intend to continue the old firm, and the transferee of an account composed of an account made up of debts due both the old and new firm can only take them as distinct, independent claims, and in an action to enforce them, he must declare on them as distinct and independent claims; he can not treat them as a single demand, and sue upon them as such.

6. *Transfer of contract for payment of money; not necessary to be in writing.*—For the transfer of a contract, express or implied, for the the payment of money, passing the beneficial interest therein to the transferee, so as to authorize him, under the statute, to sue thereon in his own name, it is not essential that such transfer should be made in writing; it may be made in any way that shows a clear intention to assign, and either by words or acts.

7. *Same; order on debtor for third person, when an assignment.*—An order given by a creditor to his debtor to pay the sum due him to a third person is revocable by the creditor, at any time before payment or acceptance by the debtor, and, until payment or acceptance, does not operate as an assignment of the claim, and if such order is not delivered to the payee therein, or to some one authorized by him to receive it, and is not accepted by the debtor, there is no assignment effected thereby.

8. *Rulings on demurrers; not considered when only shown by judge's bench notes.*—A judge's "bench notes" is no part of a record; and when rulings on demurrers are shown no where in a record on appeal except in the judge's "bench notes," which are copied in the transcript, such rulings will not be reviewed by the appellate court.

9. *Set-off; can not be raised by owner in suit to enforce material-man's lien.*—In an action to enforce a material-man's lien on a building, where the owner is a party defendant only for the purpose of protecting his property in the building, no question of set-off in favor of the owner against plaintiff's demand can be raised.

10. *Enforcement of material-man's lien; when judgment against con-*

[Lee *et al.* v. Wimberly.]

*tractors admissible in evidence.*—In an action to enforce a material-man's lien on a building, where the material was sold to the contractors, a judgment obtained by the contractors against the owner of the building is relevant and admissible in evidence to show that there existed an unpaid balance due by the owner to the contractors.

11. *Same; fact of other lien holders incompetent evidence.*—In an action to enforce a material-man's lien on a building, it is not competent for defendants to prove that there were other lien holders.

APPEAL from the Circuit Court of Butler.

Heard before the Hon. JOHN P. HUBBARD.

Appellee, H. T. Wimberly, brought this suit on an account, which he alleges the Greenville Brick & Building Company transferred to him. The suit is against the Greenville Hotel & Improvement Company, a corporation, and Robt. A. Lee, R. S. Lee, J. G. Bozeman and J. H. Perdue, alleged partners, doing business under the firm name of Greenville Hotel Contractors & Builders. Its purpose is to recover a judgment against Robt. A. Lee, R. S. Lee, J. G. Bozeman and J. H. Perdue, as such alleged partners, and to have a material-man's lien declared against the hotel building and lot, which is alleged to be the property of the Greenville Hotel & Improvement Company.

The complaint contains two counts, which are as follows : "The plaintiff claims of the defendants the sum of six hundred and thirty-five 15–100 dollars ($635.15) due on, to-wit, Feb'y 1st, 1892, for brick sold to the defendants by the Greenville Brick & Building Company from, to-wit, July 22d, 1891, to Feb'y 1st, 1892, which, with interest thereon, is still due and unpaid, and is the property of plaintiff."

"The plaintiff further claims of the defendants the sum of six hundred and thirty-five and 15–100 dollars ($635.15), for brick and other material furnished by the Greenville Brick & Building Company, from to-wit, July 22d, 1891, to Feb'y 1st, 1892, for the purpose of erecting a hotel building on corner of Hickory and Commerce Streets in the city of Greenville, Alabama. That the said brick furnished by said Greenville Brick & Building Company was used for the purpose of erecting said hotel building, and that said sum of six hundred and thirty-five and 15–100 dollars ($635.15) is for the said material furnished, and that on the 18th day of Feb'y, 1892, the plaintiff gave notice to the defendants that said

[Lee *et al.* v. Wimberly.]

material had been furnished to them for the purpose of erecting said hotel building and that the sum of six hundred and thirty-five 15–100 dollars ($635.15) was still due and unpaid therefor, and that the plaintiff looked to his lien upon the said hotel building and on the land on which the same is situated, to the extent of his ownership of all the right, title and interest owned therein by said defendants, and that ten days after said notice plaintiff would file his lien aforesaid. And plaintiff further avers that on the 4th day of March, 1892, that plaintiff did file his lien in the office of the judge of probate of Butler county, Alabama, by leaving with the said judge of probate a statement of the said amount due for said material furnished, as hereinbefore stated, and a description of the said material furnished, as hereinbefore stated, and a description of the said property on which said lien is claimed, and the name of the Greenville Hotel & Improvement Company, as owners thereof, and the Greenville Contractors & Builders, as the contractors therefor. Wherefore the plaintiff sues to recover a judgment for said sum of six hundred and thirty-five and 15–100 dollars ($635.15), and the interest thereon, and an attorney's fee of $25, and all costs in this behalf expended, and for the establishment and satisfaction of a material-man's lien in favor of plaintiff, and for the condemnation of any unpaid balance that may be due the said Jas. H. Perdue, Robt. S. Lee, J. G. Bozeman and Robt. A. Lee, as contractors, by the Greenville Hotel & Improvement Company, and for the condemnation and order of sale of said hotel building and lot hereinbefore described. That said sum of six hundred and thirty-five and 15–100 dollars ($635.15) is still due and unpaid, and is the property of plaintiff. Plaintiff acknowledges a credit of one hundred and twenty-five dollars on above claim."

The defendants interposed several demurrers to each of the counts of the complaint, but as the record shows no ruling upon these demurrers, it is not necessary to set them out.

Defendants pleaded the general issue; payment, and a set-off; and also put in issue, by sworn pleas, (1), the plaintiff's ownership of the cause of action, which is the foundation of this suit; (2), whether Robert A. Lee was a partner with J. H. Perdue, J. G. Bozeman and R. S.

Lee ; (3), whether Robert A. Lee was liable in this suit ; and, (4), that each and every allegation of the complaint is untrue.

On the trial of the cause, as is shown by the bill*of exceptions, the evidence introduced tended to show the following facts : The Greenville Hotel & Improvement Company, a corporation, entered into a written contract with J. H. Perdue, R. S. Lee and J. G. Bozeman, who were mechanics and builders, in which it was stipulated that such mechanics and builders should furnish the material and labor and erect for said corporation at Greenville, Alabama, a hotel according to certain plans and specifications. Said mechanics and builders, J. H. Perdue, R. S. Lee and J. G. Bozeman, executed their bond with security for the faithful performance of their said contract. After R. S. Lee, J. G. Bozeman and J. H. Perdue had executed their said contract for the building of the said hotel, they hired Robert A. Lee as their secretary or clerk, to write their letters, answer communications in regard to building material, and it was agreed that in case the said contractors made a profit, he, the said Robert A. Lee, would have for his wages as clerk, one-fourth of the net profits ; but, if the contractors did not make anything he was not to charge the contractors anything. J. H. Perdue, R. S. Lee and J. G. Bozeman were the only persons with whom the hotel corporation contracted for the building of the hotel. Robert A. Lee never told any person that he was a partner. On the contrary, Wm. M. McGehee, the manager of the affairs and business of the Greenville Brick & Building Company, before and at the time the brick in controversy were sold and delivered, resided in the same town of Greenville with the said Robert A. Lee, where the hotel was being built, and the said McGehee was socially and personally known to Robert A. Lee and knew that said Robert A. Lee was not a partner in any of the hotel contractors' transactions. The said Wm. M. McGehee and one John A. Owens and one Bartow Wimberly were doing business as makers of brick, using as a firm name, Greenville Brick & Building Company, and as such subscribed $300, payable in brick to the capital stock of the Greenville Hotel & Improvement Company. The said Bartow Wimberly signed the book of subscription for the Greenville Brick & Building

[Lee *et al.* v. Wimberly.]

Company's subscription for the sum of $300, payable in brick. The Greenville Hotel Contractors & Builders, J. H. Perdue, R. S. Lee and J. G. Bozeman, in July, 1891, made a contract with the Greenville Brick & Building Company, that the latter should furnish the former the brick for the hotel. The said Bartow Wimberly shortly thereafter purchased the interest of said John A. Owens in the Greenville Brick & Building Company and after this purchase the said McGehee and the said Bartow Wimberly went on in the brick business just as they were doing before Owens sold to Wimberly. In August or September, 1891, Bartow Wimberly died, leaving a widow and minor children. The said McGehee and Bartow Wimberly's widow did not agree to do business under the firm name of the Greenville Brick & Building Company; but without any agreement or contract of partnership with said Wimberly's widow, said McGehee continued using the old firm name of Greenville Brick & Building Company, and under such name delivered to the Greenville Hotel Contractors & Builders the last brick for the hotel on November 18th, 1891. The way the claim which is the foundation of this suit was transferred to plaintiff, H. T. Wimberly, was, that said Wm. M. McGehee made out the account due for the brick and stated the amount of brick delivered by the Greenville Brick & Building Company, and then wrote at the bottom of the account an order to the contractors to pay H. T. Wimberly all of the account less $100, and sent the same to Robt. A. Lee by a draymen or somebody. This order was never seen by or delivered to Robt. A. Lee, or either of the contractors, or to H. T. Wimberly. Neither Robt. A. Lee nor the contractors ever heard of such an order until the trial of this case. On the 18th of February, 1892, Wm. M. McGehee filed a material-man's notice, made oath to a material-man's lien in favor of the Greenville Brick & Building Company, and H. T. Wimberly gave a like notice, as transferee, and M. W. Wimberly made oath and filed a material-man's lien for H. T. Wimberly. The foundation of each notice and lien was the account which is the foundation of this suit. In the one, McGehee claims this account to be the property of the Greenville Brick & Building Company, and he swore that it was the property of the said Greenville Brick & Building Com-

[Lee *et al.* v. Wimberly.]

pany.  H. T. Wimberly never accepted the transfer of
the account, which is the foundation of this suit, in
payment, nor as collateral, for any sum the Greenville
Brick & Building Company owed him.  The cross-ex-
amination of said McGehee is sufficiently set out in the
opinion.

The plaintiff offered in evidence, against the objec-
tion and exception of the defendants, the judgment re-
covered in the circuit court of Butler county by James
H. Perdue, J. G. Bozeman and R. S. Lee against the
Greenville Hotel & Improvement Company, and the
transfer of this judgment to R. S. Lee by the plaintiffs
in said cause.  The defendants offered to prove, by the
record of the circuit court, that there had been several
judgments recovered against the Greenville Hotel &
Improvement Company, fastening material-men's liens
thereon, but the court sustained the plaintiff's objection
to the introduction of the evidence of such judgments,
and the defendants separately excepted to each of said
rulings of the court.  The other facts of the case are
sufficiently stated in the opinion.

The defendants separately excepted to each of the fol-
lowing portions of the court's general charge to the jury :
(1) "A transfer is where one person passes their right
in a chose in action to another."    (2) "If the Brick &
Building Company sold brick to the contractors and
builders and the Brick & Building Co. passed this inter-
est in that contract, and to the money to be received
under that contract, to the plaintiff, then he has such an
interest as enables him to sue."    (3) "If plaintiff had
this transferred to him in payment and discharge of the
liability that the brick company was due to him or to
secure any liability, it would be such a transfer as would
enable him to maintain the suit."    (4) "If you find the
partnership liable, then the question of controversy is as
to whether R. A. Lee constituted a member of the al-
leged defendant partnership.  If he did, then he is lia-
ble.  If he did not, then he is not liable.  Now,
was he a member of that firm?  That brings you
to consider the evidence in connection with what
in law constituted a man in partnership.  It is
a question of fact that the jury must decide."
(5) "Now, what is a co-partnership?  There are differ-
ent tests that you apply.  Some may be insufficient, and

35

they may be sufficient to establish in the minds of the jury the position that a partnership existed or did not exist. A partnership is where two or more persons mutually enter into an undertaking by which they are to share in the profits or losses of the enterprise. Their interest may be unequal, and whether they participated in the losses, or whether they participated in the profits, or one of them only, is an incident in evidence which bears upon the question as to what was the relation existing between them." (9) "If you find that R. A. Lee was a co-partner, he is liable along with the other partners, if you find against them. If he is not a partner, judgment should only be against the other three interested, because a plaintiff may sue four persons as partners, and if it should turn out that one is not a partner, it does not defeat the plaintiff's right to recover against the others who are partners." The court, at the request of the plaintiff in writing, instructed the jury as follows: "(B.) The court charges the jury that if they are reasonably satisfied from the evidence that R. A. Lee held himself out to the Greenville Brick & Building Company, transferrors of the plaintiff, as a partner, or jointly interested in the undertaking of the building of the Greenville hotel by R. S. Lee, J. H. Perdue and J. G. Bozeman, as contractors, and thus induced the plaintiff's transferrors to contract with the Greenville Hotel Contractors & Builders, to furnish brick to be used in building the Greenville hotel, and that the brick thus furnished were actually used in and about the construction of the Greenville hotel, then the said R. A. Lee would be liable as a partner to plaintiff, and plaintiff would be entitled to recover, if he, within ninety days after this last brick was furnished, filed his claim and lien with the judge of probate of Butler county, according to the statute in this behalf." (2.) "Participation in net profits of an enterprise is an evidence of partnership." The defendants separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give among others, each of the following written charges to the jury: (1.) "That if the Greenville Brick & Building Company gave an order to pay the amount claimed to be due by this suit to H. T. Wimberly, and sent such order by a drayman or other person to R. A. Lee, such order so sent would not be

[Lee *et al.* v. Wimberly.]

an assignment of the claim such as would enable plaintiff to maintain suit." (2.) "If the Greenville Brick & Building Company gave an order to R. A. Lee to pay the claim in controversy to H. T. Wimberly, and afterwards gave notice and filed a lien on such claim, that the giving of such notice and filing of such lien was a revocation of such order, and the plaintiff would have no right to maintain this suit so far as any right may accrue from such order."

There was judgment in favor of the Greenville Hotel & Improvement Company; and there was a personal judgment for the amount claimed in favor of the plaintiff, H. T. Wimberly, against the remaining defendants, Robt. A. Lee, J. H. Perdue, J. G. Bozeman and R. S. Lee; and from this personal judgment said defendants appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

J. C. RICHARDSON, for appellants.—The account sued on was never received by Lee, and never delivered to H. T. Wimberly. There was not a sufficient transfer to enable appellee, as transferee, to maintain this suit.— *Coleman v. Hatcher*, 77 Ala. 220 ; 5 Lawson's Rights & Remedies, §§ 2656-7; *Christmas v. Russell*, 14 Wall. 84 ; *Clarke v. Cilley*, 36 Ala. 654; *Ins. Co. v. Tunstall*, 72 Ala. 147 ; *Sterrett v. Miles*, 87 Ala. 474; *Read v. Buffum*, 12 Amer. St. Rep. 133. If this be not true, the record shows that immediately before the bringing of this suit, and while the initiatory notice and lien therefor was being inaugurated, said McGehee gave notice and made oath that the cause of action sued on was the property of the transferror, the Greenville Brick & Building Company. So that there was no evidence to support the charges of the court predicated upon the idea that there had been a transfer to appellee of this cause of action.—*Christmas v. Russell*, 14 Wall. 84 ; 5 Lawson's Rights & Remedies, §§ 2656-7.

Robert A. Lee, one of the defendants sued, was not a partner in the firm of the Greenville Hotel Contractors & Builders. He was to be compensated for his services out of the profits, if there were any.—17 Amer. & Eng. Encyc. of Law, pp. 845-6-8 ; *Hodges v. Dawes*, 6 Ala. 216; *Emanuel v. Draughn*, 14 Ala. 306; *Smith v. Garth*, 32 Ala. 372; *Couch v. Woodruff*, 63 Ala. 472; *Mayrant v.*

[Lee *et al.* v. Wimberly.]

*Marston*, 67 Ala. 457; *Tayloe v. Bush*, 75 Ala. 436 ; *Thompson v. Bank*, 111 U. S. 529 ; *Hahlo v. Mayer*, 22 Amer. St. Rep. 753.

C. E. HAMILTON and GAMBLE & POWELL, *contra.*—The rule is that every one who authorizes another to believe him a partner is, as to such person, a partner.—Parson on Partnership, pp. 63; 68, 70, 71, 129, 130; *Schlapback v. Long*, 90 Ala. 525; *Hughes v. O'Bryan & Washington*, 74 Ala. 64; *Ala. Fertilizer Co. v. Reynolds*, 85 Ala. 19.

Although one may not have an interest in the capital or property employed in a particular business, yet, if he has an interest in the net profits as such, then this will constitute him a partner as to third persons.—*McDonnell v. Battle House Co.*, 67 Ala. 90 ; *Nelms v. McGraw*, 93 Ala. 246.

HEAD, J.—It was the plaintiff's purpose to sue and obtain judgment against Jas. A. Perdue, Robert S. Lee, J. G. Bozeman and Robert A. Lee, as partners under the name of Greenville Hotel Contractors & Builders, for material sold them by a partnership called the Greenville Brick & Building Company, to be, and actually, used in the construction of an hotel in Greenville, which they had contracted to build for a corporation, known as Greenville Hotel & Improvement Co.—the plaintiff claiming to be the transferee of the claim—and to establish and enforce a material-man's lien on the building for the payment of such judgment; but the pleader made the mistake of declaring against all the parties, both the contractors and owner of the building, as joint purchasers of, and debtors for, the material sold, thereby creating a fatal variance between the allegations and the proof. The contractors who bought the goods were the only debtors. The owner of the building was under no personal liability to the material-men. Its only liability consisted in the charge or lien upon its building, and upon any unpaid balance it owed the contractors, which, under the law, might be created and established for the security of the price of the material furnished. The law permits and requires, in order to bind him, that the owner be made a party defendant to the suit, but he must be brought in upon appropriate allegations showing his true relation to the subject matter. It can not

be properly alleged that he was a joint purchaser of the goods, with the contractors, who were, in fact, the only purchasers. In the first count of the complaint this mistake appears in express terms. The second count does not, in express words, declare who the purchasers were, or who the owner of the building, but construing the pleading most strongly against the pleader, the legal effect of the count is that the goods were sold to all the defendants. The recital, as shown by the count, in the declaration of a lien alleged to have been filed in the office of the judge of probate, that the Greenville Hotel & Improvement Company was owner of the building, and the Greenville Contractors & Builders, the contractors therefor, is not an allegation that such was the fact, or which relieves the complaint of the vice pointed out. The result is, that the plaintiff could not lawfully recover because of the variance. The rulings of the court on this feature of the case were erroneous.

Another defect fatal to a recovery, as the case is now presented, is the allegation that the defendant, Robert A. Lee, was a joint debtor with the others, when all the evidence shows, without conflict, that he was not such. He was the mere clerk or secretary of the contractors, employed by them to perform certain services, for a stipulated compensation : and this relation was expressly disclosed in written transactions had by him for his principals with the sellers of the goods, one of which was the very contract itself for the sale and purchase of the goods in question. Besides, it is shown, without dispute, that McGehee, one of the sellers, actually knew, when the goods were sold, that Lee was not a member of the partnership. The evidence discloses no act of his which did not appertain to his office of secretary, or from which it could be said he was misleading the public by holding himself out as a partner ; and if he had done such an act, the plaintiff could take nothing thereby, because the sellers did not act on it, knowing, as they did, that he was only an employé. The fact that his compensation was to be measured by the profits of the enterprise, if any, did not constitute him a partner. The nature of the contract shows beyond question there was no intention to constitute him a member of the partnership.—*Tayloe v. Bush*, 75 Ala. 432. There was nothing upon this question to submit to the jury, and

[Lee *et al.* v. Wimberly.]

the errors of the court, in this regard, will be apparent from what we have said. That these variances are fatal to a recovery, we refer to *Walker v. Dock & Ins. Co.*, 31 Ala. 529 ; *Jones v. Englehardt*, 78 Ala. 505 ; *Jackson v. Bush*, 81 Ala. 396. The case of *Walker v. Dock & Ins. Co.*, *supra*, construes section 2609 of the Code of 1886. We can not assent to the views and conclusion of the court on this point in *Bibb v. Allen*, 149 U. S. 481.

The alleged transfer of the claim in suit to the plaintiff was denied by sworn plea, under the rule. This put upon plaintiff the burden of proving that he was the party really interested in the demand. The defendants insist that there is no evidence tending to show such a transfer, prior to the bringing of this suit. The record leaves this question not free from difficulty. The claim was contracted at sundry times from July 22, 1891, to November 18, 1891. The Brick & Building Co., sellers, at first consisted of Wm. M. McGehee, Bartow Wimberly and J. A. Owens. Owens, after the account began, sold his interest in the firm to Bartow Wimberly. Bartow Wimberly died in August or September, 1891. Thereafter, McGehee and the widow of Bartow Wimberly carried on a like business, under the same firm name. What portions of the claim in suit was contracted before the death of Wimberly and what after, do not appear. Nor does it appear that the firm, prior to his death, bound itself to furnish any specified quantity of material (brick). They did engage to furnish so many brick, at specified prices ; but the contract, which was in writing, went further and stipulated that it was to hold good only so long as sellers' brick were accepted. Hence, it was not binding on buyers, and, therefore, did not bind sellers, for the want of mutuality. The death of Wimberly dissolved the partnership, which, of course, terminated the possibility of further sales on the partnership account. The business subsequently carried on by McGehee and the widow, involved the creation of a new partnership between them, as distinct from the old as if formed of entirely different individuals, and conducted under a different name ; and the sales they thereafter made were just as distinct from those made by the old firm. They bore no relation to, or connection with, each other. The old account vested exclusively in McGehee, as surviving partner, for the purpose of liquidation and settlement of

[Lee *et al.* v. Wimberly.]

the partnership business. As surviving partner, he had authority to transfer it for the payment or security of a partnership liability. So, also, as a member of the new firm, he was authorized to transfer its account, for any legitimate purpose of that partnership. But, if he transferred both, the transferee could only take them as, what they were, distinct, independent claims ; and in an action by him to enforce them, he should declare on them as such. He can not properly treat them as a single demand, and sue upon them as such ; though both may be joined in the same action. It is not essential to the transfer of a contract, express or implied, for the payment of money, passing the beneficial interest therein to the transferee, so as to authorize him, under the statute, to sue thereon in his own name, that it be made in writing. It may be made in any way which shows a clear intention to assign; and either by words or acts.—5 Lawson's Rights and Remedies, § 2655; *Planters &c. Ins. Co. v. Tunstall*, 72 Ala. 142. There must appear not only conduct on the part of the assignor evincing an intention to assign, but there must be an acceptance of the assignment, by the assignee, in order to its completion.—72 Ala. 142, *supra*. The authorities seem to hold that an order given by the creditor to the debtor to pay the sum due to a third person, is revocable by the creditor, at any time before the payment or acceptance by the debtor, and, until then, does not operate as an assignment of the claim.—5 Lawson's Rights and Rem., § 2656 ; *Coleman v. Hatcher*, 77 Ala. 217 ; *Sterrett v. Miles*, 87 Ala. 472. It is very clear, also, that if such order is not delivered to the payee therein, or any one by him authorized to receive it, and is not accepted by the debtor, there is no argument to support the proposition that an assignment was thereby effected.

These are some general principles applicable to the evidence in this case. The plaintiff's evidence, offered in support of the alleged transfer, shows that, in what was done, both claims—that in favor of the old partnership, and in favor of the new—were treated as one. They are declared on as one. No information is given of the amount of either, separately. Hence, confusion and trouble. Was there a valid transfer of either, or both as one, before suit brought? The evidence on this subject consists in the testimony of W. M. McGehee, sup-

plemented by certain acts touching the perfection of a material-man's lien, which will be noted for whatever influence they may exert. His testimony is as follows: On direct examination, "that he transferred this claim, the subject of this suit, to H. T. Wimberly, and that thereafter he had a settlement with R. A. Lee, as secretary of the Contractors & Builders, as to the amount due the Brick & Building Company for brick; that the amount so ascertained to be due was $496.63, with interest thereon since November 18th, 1891, after all the credits were given." Again, he says further on: "That since he delivered the transfer of this claim to the plaintiff he had demanded payment from the Builders & Contractors for these brick; that the claim was transferred to plaintiff when the brick was sold to the contractors." (It will be remembered the brick were sold at different times from July to November 18th.) The following cross examination of the witness occurred: "Did you have a conversation with R. A. Lee to-day? Yes, sir. Didn't you tell him in that conversation that you had never transferred this claim to H. T. Wimberly? I told him that I hadn't transferred it in writing. You never transferred it in writing? No, sir. Did the time of transferring this cause of action to H. T. Wimberly occur before or after the death of Bartow Wimberly? Afterwards. Did you sign the name of the Brick & Building Company, or did you sign your name and Mrs. Wimberly, as surviving partners of the Brick & Building Co. to the transfer? I signed my name as secretary. Did you or did you not? I done it one of the two ways. Secretary of what? Of the surviving partners. Did Mrs. Wimberly ever appoint you as secretary of the surviving partners of the Brick & Building Co? No, Sir. Then you simply signed your name to it? As secretary. What was you secretary of? We were surviving partners on the death of Mr. Wimberly. Mrs. Wimberly never made me secretary. Have you ever seen H. T. Wimberly with regard to this transfer? No, sir. Did H. T. Wimberly ever accept this transfer from you in payment of, or as collateral for, any amount the Brick & Building Co. owed him? No. Didn't you tell R. A. Lee that Mack Wimberly, as agent for plaintiff, refused to accept this account sued on as a credit until it was paid? I did at one time. When was

that? Sometime ago. Has not it been since this suit was brought? I don't think it was. Don't you know it was? I told him that at one time. I don't recollect when. Do you tell this jury that before this suit was begun and before this lien was filed that plaintiff, Wimberly, accepted this $496, that the Brick & Building Co. owed to H. T. Wimberly? No, sir. When did he accept it as a payment on the $496, since this suit was brought or before? Since this suit was brought. It was the day we adjusted the claim. Did he give you credit for $496? Yes, sir. Did he give it before this suit was brought? No, sir. Was it since this suit was brought? Yes. Haven't you been to Mr. Lee several times since this suit was brought to try to get him to adjust this matter, and try to get him to pay it to you? Yes. And didn't you tell him when you were trying to get him to pay it that if he didn't pay it to H. T. Wimberly that the Brick & Building Co. would still be owing Wimberly? I did. I have told Lee that. Since March? When the lien was filed? Yes, sir. Did you hire the lawyers to bring this suit and not H. T. Wimberly? Yes, sir. Did H. T. Wimberly authorize you to hire lawyers to bring this suit on his claim you had transferred to him? No, sir. If you fail in this suit, wont you still be indebted to H. T. Wimberly for the $496? I will. Was there any agreement that he (plaintiff) would take this claim and discharge you? No, sir." Further on, the bill of exceptions contains this recital: "The witness McGehee further testified, that the only way that the claim in suit was ever transferred to plaintiff was that he made out the account due for brick and stated the amount of brick delivered by the Brick & Building Co., and then wrote at the bottom of the account an order to the contractors to pay H. T. Wimberly all this amount, less $100, and sent the order to R. A. Lee by a drayman or somebody. That Lee never said anything about receiving the order." The evidence further shows, that on February 8, 1892, C. E. Hamilton served the Greenville Hotel & Improvement Co. with a copy of a notice, with the name of "H. T. Wimberly, per C. E. Hamilton, atty.," subscribed thereto, notifying that company of the purpose of the "undersigned" to file a lien on the hotel building for this demand, and stating therein, "Whereas, said Brick & Building Company transferred said claims

for said brick furnished." Immediately following this notice there is copied in the transcript, without a remark or statement in reference to it, a notice to the president of the Hotel Company that the Brick & Building Co. would file a lien on the hotel building for amount due the latter company for the brick furnished from July 22, 1891, to February 1, 1892. No reference is made to any transfer of the claim. It is signed "Greenville Brick & Building Co., per C. E. Hamilton, atty." On the same day, February 8, 1892, C. E. Hamilton served on the Hotel Company a notice (leaving the amount of the claim blank) that the Greenville Brick & Building Co. would rely upon their lien on the building. On the 4th March, 1892, C. E. Hamilton filed in the probate court a declaration of a lien on the building, for this account, in favor of plaintiff. It is subscribed "H. T. Wimberly," and sworn to by M. W. Wimberly. It recites that the claim was transfered to H. T. Wimberly by said Greenville Brick & Building Co. On the same day (March 4th,) Hamilton also filed a declaration of lien on the building, in favor of the Brick & Building Company. It is subscribed, "Greenville B. & Building Co. by W. M. Mc-Gehee," and is sworn to by McGehee. Hamilton testified that McGehee swore to both these liens in his presence, and as per his advice as an attorney; but in this it appears he was mistaken, as the plaintiff's declaration was sworn to by M. W. Wimberly, It is indicated in McGehee's testimony that he employed Hamilton to file what he termed "his" lien, which we take to be the lien above mentioned, in favor of the B. & B. Company. It is nowhere intimated by what authority Hamilton did any of the other acts by him done, or by what authority M. W. Wimberly acted in swearing to the plaintiff's declaration. Nor does it appear that Hamilton was then a practicing attorney at law. R. A. Lee testified for defendants that no drayman or other person ever delivered to him any order from McGehee or the Brick & Building Co. to pay the demand or any part thereof to plaintiff, and that he never heard of the alleged transfer to plaintiff until this suit was brought. The foregoing comprises substantially all the record shows touching the alleged transfer. It presents much contradiction and inconsistency. Upon due consideration we are of opinion that we can not properly pronounce upon its

[Lee *et al.* v. Wimberly.]

legal effect. We have stated the general principles of law, in which the jury should be instructed, and will leave that body to solve the question, in the light of those principles, whether there was a valid transfer of the claims in question, or either of them, to the plaintiff, before this suit was brought, either in payment or as collateral security of a debt owing the plaintiff, so consummated as to pass the beneficial interest in the demand to the plaintiff. We deem this the better course, also, in view of the fact that the judgment must be reversed for other causes, and that the case will probably be tried again on different pleadings, and upon a more definite and consistent presentation of the facts.

The verdict and judgment were in favor of the defendants upon the issue in respect of the lien sought to be established. We, therefore, do not notice the assignments of error on that subject.

The record fails to show any ruling of the court on the demurrers to the complaint. We can not consider them. The judge's bench note copied by the clerk, in the transcript, is no part of the record. It can not be considered.

If the pleadings and evidence had justified the enforcement of a material man's lien on the building, no question of set-off in favor of the owner could have properly arisen. Being a party defendant only for the purpose of protecting its property in the building, it could interpose no set-off against the plaintiff's demand.

The judgment obtained by the contractors against the owner, which was transferred to R. A. Lee, had no relevancy to any issue in the cause, except to show that there existed an upaid balance due by the owner to the contractors upon which the plaintiff was seeking to fasten a lien, as well as to aid in establishing a lien on the building. In such cases, we think such an adjudication between the contractor and owner competent evidence. And it would not be competent for the defendants to prove that there were other lien holders. All such liens stand on an equal footing. If the owner's liability is insufficient to cover all; they must be paid *pro rata,* but that adjustment can not be had in a suit to establish the lien.—Code, § 3040.

What we have said will serve as a sufficient guide on another trial, without further noticing, in detail, the several exceptions reserved.

Reversed and remanded.