(84 South. 743)

**GREIL et al. v. DURR.   (3 Div. 391.)**

(Supreme Court of Alabama.   Nov. 27, 1919. Rehearing Denied Feb. 5, 1920.)

1. BANKRUPTCY ⊜≈308 — RIGHT OF CITY AGAINST BANKRUPT DEPOSITEE OF ITS FUNDS PARAMOUNT TO THAT OF ITS TREASURER.

A city treasurer as the city's agent, and although he was insurer of its deposited funds, and might personally hold the depositee to an accounting, the city, as beneficial owner, had the paramount right to do so, and its intervention in depositee's bankruptcy superseded the treasurer's right to prosecute a personal claim, so that his bondsmen were not subrogated to his rights to proceed against the depositee by their subsequent payment of a part of the city's loss.

2. BANKRUPTCY ⊜≈375—TRANSFER OF PROPERTY IN RETURN FOR MONEY TO EFFECT COMPOSITION NOT FRAUDULENT.

Where depositee of city's money, in his bankruptcy proceeding with the court's approval, turned property over to another in return for money to effect a composition, and the city

⊜≈For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] Ante, p. 639.

was a scheduled creditor, the transfer could not have been in fraud of the city treasurer's bondsmen, whatever reservation was made as to any amount transferee might receive from the property in excess of the named amount for the depositee's wife in lieu of her inchoate dower.

3. BANKRUPTCY ⊕⇒434—BONDSMEN OF CITY TREASURER, RECEIVING NOTE FROM DISCHARGED BANKRUPT DEPOSITEE OF CITY FUNDS, BECOME SUBSEQUENT CREDITORS.

Where depositee of city funds, after discharge in bankruptcy, the city having filed its claim, recognized his moral obligation to the city treasurer's bondsmen by giving them his promissory note for what they had paid the city on the treasurer's liability, they became subsequent creditors of bankrupt.

4. MORTGAGES ⊕⇒32(1)—TRANSFER BY BANKRUPT HELD ABSOLUTE CONVEYANCE.

A conveyance by bankrupt to secure money for composition with creditors containing an agreement that money realized from the property beyond a certain sum was to be paid bankrupt's wife in lieu of her inchoate dower, interest in the property held an absolute conveyance, and not a mortgage, in an action by city treasurer's bondsmen upon depositee's note given subsequent to discharge.

5. BANKRUPTCY ⊕⇒175—GIFT BY BANKRUPT TO WIFE VOID AS TO EXISTING, BUT NOT AS TO SUBSEQUENT CREDITORS, UNLESS MADE TO DEFRAUD.

A bankrupt's transfer of property to secure money for composition without reservation to himself, but with reservation to his wife of excess transferee should receive for property, if a mere gift, to wife, would be fraudulent and void as to existing creditors, but not as to subsequent creditors, unless made with intent to hinder, delay, or defraud them.

6. BANKRUPTCY ⊕⇒181 — TRANSFEREE'S PAYMENT TO BANKRUPT'S WIFE OF EXCESS AMOUNT RECEIVED FROM BANRKUPT'S PROPERTY OVER THAT PAID HELD CONSIDERATION FOR RELINQUISHMENT OF INCHOATE DOWER.

A transfer of property by bankrupt to secure money for composition, with provision that amount transferee received in excess of amount he paid go to bankrupt's wife, held not a gift, but a consideration inducing relinquishment of her inchoate dower interest in her bankrupt husband's lands.

7. BANKRUPTCY ⊕⇒178(1) — INSUFFICIENT SHOWING OF BANKRUPT'S INTENTION TO DEFRAUD FUTURE CREDITORS BY TRANSFER.

Where a bankrupt transferred certain property to secure composition funds, excess received by transferee to be paid to bankrupt's wife in consideration for relinquishment of dower, facts held not to show that bankrupt intended thereby to hinder, defraud, or delay future creditor whose existence he then had no reason to anticipate.

8. ASSIGNMENTS ⊕⇒52, 59 — EQUITABLE ASSIGNMENTS BY WIFE OF PROPERTY TO PAY HUSBAND'S DEBT NOT REVOCABLE, APART FROM STATUTORY INHIBITION.

Where bankrupt's wife gave her note to husband's subsequent creditors to be paid from surplus funds due her on agreement from property bankrupt had transferred to secure composition money, the order to pay signed by transferee held to operate as an equitable assignment pro tanto of the trust fund, which she could not revoke, apart from statutory inhibition against her becoming surety for her husband's debt.

9. HUSBAND AND WIFE ⊕⇒171(8)—WIFE'S ASSIGNMENT OF PROPERTY HELD COLLATERAL SECURITY FOR HUSBAND'S DEBT.

Where a husband transferred lands to secure money for composition in bankruptcy, surplus to be received by transferee of such land to go to bankrupt's wife in consideration of inchoate dower interest, the wife's pledge of such trust fund to pay husband's subsequent debt held a conditional appropriation, which though absolute in form, was but a collateral security for the husband's debts, not binding upon her.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Bill by John W. Durr, as executor, against Meyer L. Greil, F. M. Billing, and his wife, Sarah Billing, to enforce payment of promissory note and for other relief. Decree for complainant, and respondents appeal. Reversed and rendered.

The bill is filed by John W. Durr, as executor of the estate of J. W. Durr, Sr., against Meyer L. Greil, F. M. Billing, and his wife, Mrs. Sarah Billing, to enforce the payment of a promissory note executed by F. M. Billing to J. W. Durr, Sr., and A. A. Wiley, and claimed to be the property of the estate of J. W. Durr, Sr.

The undisputed facts are as follows:

One R. H. Somerville was the treasurer of the city of Montgomery in 1901, and as such treasurer he deposited a large amount of money belonging to the city with the bank of Josiah Morris & Co., which was owned and conducted by F. M. Billing as an individual. Thereafter said bank failed, and the deposit was lost to the city. After paying 25 per cent. of his debt to unsecured creditors, Billing was adjudged a bankrupt, and pending this proceeding he effected a composition with his creditors, including the city of Montgomery (claiming the amount of the lost deposit) on the basis of an additional payment of 10 per cent. In order to make this payment, Billing procured $90,000 from respondent Greil, to whom he and Mrs. Billing conveyed a large amount of his property, real and personal, in fee simple, by an absolute conveyance dated March 31, 1906, which was duly recorded. Shortly prior thereto, on March 12, 1906, a written agreement was entered into between Greil and the Billings and one S. Roman as trustee for Mrs. Billing, which stipulated for the advancement of said sum of money by Greil, and the execution of said

conveyance by the Billings, said agreement reciting:

"That upon the making of the conveyance to the said Greil he shall thereupon have and own all of said property and assets with the full right and power to dispose of the same upon such terms, at such prices, and at such time as may to him seem best, nor shall he be subject to an accounting until full and final disposition be made of all the assets, unless before the full and final disposition thereof the said Meyer L. Greil shall be repaid as hereinafter set forth, and upon such accounting for any settlement the prices, terms, and conditions upon which the said Greil may have disposed of any or all of said assets shall not be subject to question by any one. After the repayment of the said * * * Greil of the entire amount of money furnished by him in making said composition and settlement, with interest at the rate of 6 per cent. per annum and all expenses incident to the making of said composition, and the selling and disposing of said asset and said property, including taxes, insurance, attorney's fees, and other expenses connected therewith, the surplus remaining shall be divided equally as follows: One-half to * * * said Greil, and one-half to S. Roman as trustee for Mrs. Billing, the said Mrs. S. W. Billing binding herself to this contract in the consideration of the foregoing."

As a result of this composition made under the orders of the court the bankrupt, Billing, was regularly and duly discharged.

Afterwards the city of Montgomery sued J. W. Durr, Sr., and A. A. Wiley as sureties on the official bond of Somerville as treasurer, which liability they compromised for the sum of $1,500. On October 29, 1906, thereafter, Billing executed to Durr and Wiley his promissory note for that amount, due in three months, for the security of which on the same date he executed a writing by which he assigned to Durr and Wiley—

"the sum of $1,500 if and when the same shall be realized from the sale or redemption or otherwise of my interest in certain land in Shelby county, * * * or from the sale redemption or in any other manner it may be realized from any other property which I have pledged, mortgaged, or conveyed in any manner to Meyer L. Greil, including the Morris Hotel in Birmingham, Ala."

This instrument contained this additional recital:

"My interest in said property has been heretofore conveyed or pledged to said Greil to secure the payment of certain advances he has made me, and said Greil is hereby authorized and requested to collect by sale of said property or in the manner he collects his said debt said sum of $1,500 and to pay the same over to said Durr and said Wiley. And a lien is hereby created upon said lands and the Morris Hotel, or my interest therein, to secure said note, and upon any and all other property so pledged or conveyed to said Greil as aforesaid."

Underneath Billing's signature to this assignment is written:

"October 23, 1906, I hereby consent to the above. S. Roman, as trustee."

On November 3, 1906, in order to raise the money to pay the city, Durr and Wiley executed their note and discounted it at a bank. They procured Meyer L. Greil's indorsement to this note under the following written agreement between them:

"In consideration of the indorsement by Meyer L. Greil of that certain promissory note, * * * it is agreed that, if at the maturity of said note there is sufficient surplus out of the asset of the former estate of F. M. Billing in the hands of said Greil to pay said note, he will upon the written request of said F. M. Billing, S. Roman, as trustee, and Mrs. Sarah Billing pay the said note; but, if there is not sufficient surplus in his hands with which to pay said note, the makers of said note agree to pay or otherwise provide for the payment of said note, until there is sufficient surplus with which to pay the same."

On the same day Mrs. Billing wrote a letter to Greil as follows:

"You are hereby requested out of the assets of the former estate of F. M. Billing now in your hands to pay at or before maturity a note of fifteen hundred dollars made by A. A. Wiley and John W. Durr bearing date of this day and payable to the order of the makers and indorsed by you, which note was for the benefit of F. M. Billing."

The Durr and Wiley note was renewed and extended from time to time, the last renewal being due March 13, 1908, which was then paid by Durr, Wiley in the meantime having died, and not having been a party to the last renewal.

The bill of complaint charges that the conveyance from Billing and wife to Greil, though absolute in form, was intended as a security only, or that, if not so intended, then it was fraudulent and void as to the claim of Durr and Wiley then contingently existing through the claim of their principal, Somerville, against Billing, which was not scheduled in the bankruptcy proceedings. The bill also charges as an alternative theory that the conveyance was fraudulent by reason of the collateral agreements by which a large and valuable interest was reserved to Mrs. Billing greatly in excess of her dower interest in the property conveyed. In another aspect the bill claims the right to funds in the hands of Greil by way of the surplus reserved in trust for Mrs. Billing by virtue of an order from the Billings and Roman as trustee to Greil to pay the Durr and Wiley note when in such funds and Greil's agreement to do so; and it is further claimed that complainant is entitled to a money decree against Greil, though never in funds

for Mrs. Billing, because of his culpable neglect in realizing upon the Billing property and executing the trust therein in favor of Mrs. Billing or her assignee pro tanto.

The answer of Greil denies that the conveyance to him by the Billings was in any sense a mortgage or security for the money advanced by him, but avers that it was absolute in fact, and without any reservation of benefit to Billing, and that the provision for Mrs. Billing was a compensationu for her dower interest. It denies that Durr and Wiley were creditors of Billing at the time of the conveyance, and avers that the compensation and discharge of the city's claim against Billing in bankruptcy left him free of any obligation to any one on account of the lost deposits, and at liberty to use his property as he did without wrong to any one. It admits that he has received from sales of the Billing estate approximately $70,000, and denies that he has ever had any surplus for account of Mrs. Billing, but admits that he has advanced to her in anticipation since July, 1909, $5,648.05.

It denies any knowledge by him of a continuing claim against him or Billing by Durr, Sr., or his executor, after Durr's final payment of the note in 1908 upon which Greil had been indorser, and denies that he has had from the Billings and Roman a written request for payment of this claim as stipulated in his agreement with Durr and Wiley other than the papers of November 3, 1906, referred to above.

Billing also denies in his separate answer the several matters denied by Greil, and alleges that the reservation to Mrs. Billing was not fraudulent, but was less in value apparently than she would have received in the usual course for her dower estate. He denies also that the properties conveyed to Greil were of a value largely in excess of the amount advanced by him. But in his testimony Billing estimates such value at about $100,000 in excess thereof.

Mrs. Billing in her answer follows substantially the answer of her husband, denies that she was ever indebted to Durr and Wiley, and repudiates her written instructions to Greil to pay her husband's debt out of her funds as not binding upon her.

The trial court found that the conveyance to Greil was fraudulent and void as to complainant, and the complainant is entitled to a decree for the amount of the debt, attorney's fee, interest, and costs, $3,390 in all, and a decree was rendered to that amount against all the respondents jointly.

Rushton, Williams & Crenshaw, of Montgomery, for appellant. Wiley and Durr were not existing creditors at the time of the conveyance to Greil, and cannot complain of a voluntary gift by Billing to his wife. 109 Ala. 607, 20 South. 51; 147 Ala. 497, 41 South. 959; 167 Ala. 461, 52 South. 402. By accepting the conveyance from Billing with the approval of the trustee of Mrs. Billing and the letter from Mrs. Billing to Greil, Wiley and Durr ratified the conveyance from Billing to Greil and cannot now question its validity. 104 Ala. 323, 16 South. 123. If the wife did not participate in the fraud, her relinquishment of the dower in other lands was a valid consideration for the conveyance by the insolvent husband. 72 Ala. 210; 76 Ala. 120; 83 Ala. 142, 3 South. 296, 3 Am. St. Rep. 702. A fraudulent intent of the debtor, participated in by the purchaser, is necessary to invalidate the sale. Section 4293, Code 1907, and the authorities there cited. Billing had a right, being a bankrupt, to procure money for a composition, the court approving, and the creditors' remedy was to move the court to set aside the composition. 227 U. S. 524, 33 Sup. Ct. 385, 57 L. Ed. 625; 64 Ala. 397; 66 Ala. 514; 104 Ala. 331, 16 South. 165, 53 Am. St. Rep. 50. Billing's note was barred by the statute of limitations, and no money judgment could be rendered thereon. 85 Ala. 218, 4 South. 695. No right of subrogation or substitution can be had here. 37 Cyc. 373–380; 25 Ala. 250; 60 Ala. 457; 6 Ala. 474.

W. A. Gunter and Tilley & Elmore, all of Montgomery, for appellee. Durr's rights were not provable in bankruptcy, and hence not affected by the composition. 171 Ala. 401, 54 South. 654; 7 Corpus Juris, § 476 and note, section 586 and note 62, and section 598 and note. If the discharge operated on the liability, the new promise reinstated it as on its old basis. 7 Corpus Juris, 346, note 32. A contingent liability is as fully within the statute of frauds as a claim which is certain. 72 Ala. 493; 59 Ala. 612. A purchaser never is entitled to interest, cost, and expenses in realizing on his purchase. 29 Ala. 262; 91 Ala. 305, 8 South. 561; 154 Ala. 422, 45 South. 908; Jones on Mortgages, § 242. The reservation to Mrs. Billing is conclusive of fraudulent intent. 64 Ala. 394; 56 Ala. 87; 47 Ala. 200; section 4287, Code 1907. The mortgage or lien given by Billing to Durr takes the debt out of the statutes of limitations. 1 Ala. 708; 51 Ala. 543.

SOMERVILLE, J. [1] In handling the funds of the city of Montgomery the city treasurer was an agent of the city; and, although he was an insurer of their safety when he deposited them in the bank of Morris & Co. (Billing), and might personally hold the depositee to an accounting therefor, yet the city, as beneficial owner, also had the same right. In such a case the right of the city was paramount to the right of the agent, and the intervention of the city as claimant

of the deposit account in the bankruptcy court superseded the right of the agent to prosecute a personal claim of his own. 2 Corp. Jur. 899, 900.

The result, therefore, of the composition and discharge of Billing's liability to the city was the extinction of any independent right of action in favor of the city treasurer or his bondsmen against Billing for the same cause of action. So, when Durr and Wiley answered their liability as the treasurer's bondsmen by paying $1,500 to the city, this could not and did not revive the old claim against Billing, nor create a new one by equitable subrogation; for the basis of subrogation had been destroyed by the composition and discharge in bankruptcy.

[2] Hence it must be concluded that the conveyance by Billing of all his scheduled property to Greil in order to procure the means required for his proposed composition —all of which was done ·under the eyes of his scheduled creditors, and with the approval of the court—could not have been fraudulent as to existing creditors, whatever may have been the value of the property conveyed, and whatever reservation may have been made in favor of Billing or his wife. The complainant has no standing for the impeachment of that transaction, as a then existing creditor.

[3] But Billing afterwards recognized his moral obligation to the bondsmen of the city treasurer, by executing to them his promissory note for the amount they had paid to the city on account of their principal's liability superinduced by Billing's own default. Thus Durr and Wiley became subsequent creditors of Billing.

[4] As subsequent creditors, they claim the right to impeach the conveyance to Greil: (1) Because it was in fact a mortgage, and they are entitled to the benefit of the residuary proceeds of the Billing property after the repayment to Greil of the amount justly due him; and (2) because, though not a mortgage, there was fraudulently reserved, by a separate, unrecorded agreement, a beneficial interest for Mrs. Billing in the nature of a secret trust, largely in excess of the value of her inchoate dower interest, the relinquishment of which was the consideration for the benefit so reserved.

As to the first proposition, we entertain no doubt whatever but that the conveyance to Greil was absolute, and in no sense intended to operate as a mortgage or security for any debt. Nor was its absolute character altered by the fact that a trust Was ingrafted upon it in favor of Mrs. Billing. "It is essential to a mortgage that there must be a binding, continuing debt, and where there is no debt a mortgage is impossible." Johnson v. Hattaway, 155 Ala. 516, 46 South. 760. The evidence does not show any conduct on the part

of Greil which should estop him from now denying that it was not an absolute conveyance, since all that he did was perfectly consistent with his claim to the contrary. Complainant can take nothing upon the theory of an equity of redemption in Billing, of which Durr and Wiley became the assignees.

[5] The second proposition invites a more serious scrutiny.

As said in Sandlin v. Robbins, 62 Ala. 477, 485:

"There never was a time when a debtor could convey his property directly, or in secret trust, for his own benefit, or for the use of his family, and thereby defeat his creditors of their lawful demands."

In that case, quoting from the text of Bump on Fraud. Con. (2d Ed.) 208, it was said of such transactions:

"The effect of the trust is not a subject for consideration. Its mere existence avoids the transfer and destroys the title as against creditors existing or subsequent."

In the instant case there was no reservation of benefit for the grantor, Billing; nothing placed in trust for his use or advantage. But it is contended for complainant that the reservation for Mrs. Billing was the same in fraudulent effect as if made for Billing himself. As to existing creditors this proposition is sound enough, if it be assumed that the reservation was a mere gift. Huggins v. Perrine, 30 Ala. 396, 68 Am. Dec. 131; 12 R. C. L. 543, § 68. As to subsequent creditors, though it were a gift, such a reservation in trust would be void only in case it were made by the grantor with the intention of hindering, delaying, or defrauding such creditors; that is, it must be tainted with actual fraud. Huggins v. Perrine, supra; Smith v. Pitts, 167 Ala. 461, 52 South. 402; Echols v. Orr, 106 Ala. 237, 17 South. 677.

[6] But very clearly the reservation in trust for Mrs. Billing was not a gift. On the contrary, it was the consideration which induced her to relinquish her inchoate dower interest in her husband's lands, which she might have asserted contingently against any title derived from him through execution sale at the suit of creditors. Such a relinquishment was a valuable consideration which may or may not have been adequate for the quite problematical return for which she stipulated.

[7] But, however this may be, we do not find in the circumstances of this transaction, and the situation of the parties, any sound basis for the conclusion that Billing had in view the circumvention of ·a future creditor, whose existence he then had no reason to anticipate, and the creation of whom was, on his part, but the voluntary recognition of a moral obligation, which does not seem to

have been at that time apparent. Nor does it appear that Mrs. Billing, a purchaser for value of the benefit reserved, was a participant in any such fraudulent purpose, even if her husband entertained it.

We come then to the final aspect of complainant's right to relief, viz. his right to enforce the written agreement made by Greil, along with his indorsement of the Durr and Wiley note, to pay the same out of surplus funds in his hands from the Billing property, when there was a surplus sufficient for that purpose.

Though this agreement is not as explicit as it might be, we think that there can be no serious doubt as to its true meaning and intent. Construing the terms of the agreement in the light of the known conditions, and of Greil's indorsement of the note, we think it is reasonably clear that Greil intended by his indorsement to assume primary responsibility for the payment of the note, but only upon the conditions expressed in the agreement, viz. that he, at the maturity of the note, or at some future time, had on hand sufficient of the surplus funds (for which he was accountable in trust to Mrs. Billing) to make such payment, and that Billing, and Mrs. Billing, and her trustee, Roman, requested him in writing to do so. We think also that there was an implication, essential to Greil's good faith in his undertaking, that he would execute the trust in favor of Mrs. Billing, or her assignees, Durr and Wiley, without unreasonable delay.

[8] The record shows that Greil received the stipulated request in writing from the three persons named. He accepted the order from Mrs. Billing to pay to her husband's creditors, Durr and Wiley, $1,500 out of funds which he held for her in trust expectant, whenever that amount was realized under the provisions of his trust.

The order to pay, and Greil's acceptance of the order, operated as an equitable assignment pro tanto of the trust fund in being or in potential expectancy by Mrs. Billing to Durr and Wiley. Wells v. Cody, 112 Ala. 278, 20 South. 381; Canterbury v. Marengo Abstract Co., 166 Ala. 231, 234, 52 South. 388, 139 Am. St. Rep. 30; Lee v. Wimberly, 102 Ala. 539, 15 South. 444; Hanchey v. Hurley, 129 Ala. 306, 30 South. 742; Harris v. Clark, 3 N. Y. 93, 51 Am. Dec. 352; 2 R. C. L. 621, § 29. And, of course, after Greil's acceptance of the order, and his assumption conditionally of the obligation to pay the Durr and Wiley note, Mrs. Billing could not, apart from the statutory inhibition against her suretyship for her husband's debt, revoke her order and annul the assignment. Lee v. Wimberly, 102 Ala. 539, 15 South. 444.

[9] We must, therefore, consider the contention by Mrs. Billing that this assignment by her was but a pledge of her money or property for the payment of her husband's debt, a question which, as we have viewed the case, is vital to complainant's right to relief.

Was Mrs. Billing's order, when accepted by Greil, an absolute appropriation of her property to her husband's debt, which is not inhibited by the statute (Hall v. Gordon, 189 Ala. 301, 66 South. 493), or was it in substance and effect a conditional appropriation merely, and hence no more than a pledge for that debt's future payment, if it were not otherwise discharged?

If a creditor accepts an order on a third person for money or goods as payment of his debt the debt is unquestionably discharged in the absence of fraud or mistake. Harrison v. Hicks, 1 Port. 423, 27 Am. Dec. 638; Moore v. Briggs, 15 Ala. 24. But, if such order is not accepted as a payment, its effect is that of a conditional payment only; that is, it operates as a payment and extinction of the debt only when the money or goods is paid to the creditor by such third person, responsively to the order. Until that event the debt persists, and the creditor has his remedy against his debtor, though he might also proceed against the third person if the latter has accepted the order.

It is clear, therefore, that Mrs. Billing's order to Greil, accepted by him, was but a conditional payment of her husband's debt to Durr and Wiley up to the moment when Greil should actually pay them; and it is equally clear that, had Billing's debt to Durr and Wiley been previously satisfied from some other source, this would have revoked Mrs. Billing's order, and would have discharged her funds or property in the hands of Greil from their conditional subjection to Billing's debt.

It follows that Mrs. Billing's assignment of her property, though absolute in form, was in fact but a collateral security for her husband's debt, which is not binding upon her, and which she may properly repudiate. See the case of Horton v. Hill, 138 Ala. 625, 36 South. 465, which, though lacking in the element of an accepted assignment, is persuasive by its analogy.

Mrs. Billing's revocation of her order to Greil to pay money to Durr and Wiley on account of Billing's indebtedness to them destroys the foundation upon which rested Greil's obligation to pay them out of Mrs. Billing's funds, since that obligation was conditional upon the continued force and authority of her order.

We do not overlook the contention of complainant that Greil became liable because of his wrongful payments of money to Mrs. Billing in anticipation of his future collection of funds for her account. But his obligation to Durr and Wiley was in no wise affected by his advances to Mrs. Billing, unless he actually had funds in hand which he refused to pay to them before Mrs. Billing withdrew his

authority to do so. The evidence is convincing that Greil has not yet collected any funds which would upon accounting have been due to Mrs. Billing.

The considerations above set forth must result in a denial of relief to complainant as against Greil and Mrs. Billing upon any aspect of the case. And, since Billing had no beneficial or residuary interest of any character in the property conveyed to Greil, or in the reservation in trust for Mrs. Billing, the bill of complaint is without equity as to Billing, and his debt to Durr and Wiley is barred by the statute of limitation of six years.

Let the decree of the circuit court be reversed, and a decree here rendered denying the relief prayed for and dismissing the bill of complaint.

Reversed and rendered.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.